1  STEVEN P. HASKETT, ESQ. (66144)
   J.B. HASKETT, ESQ. (290683)
2  HASKETT & ASSOCIATES, a P.C.
   a Professional Corporation
3  701 "B" Street, Suite 1115
   San Diego, CA 92101
4  Telephone: (619) 231-3737
   Facsimile: (619) 233-1223
5
   Attorneys for: DEBORAH SCHONBAK
6

F I L E D
Clerk of the Superior Court
APR 0 1 2015
Deputy
BY

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **IN AND FOR THE COUNTY OF SAN DIEGO**

10  D E B O R A H   S C H O N B A K ,  )  CASE NUMBER   **37-2015-00011087-CU-BC-CTL**
    individually,                      )
11                                     )  COMPLAINT FOR DAMAGES
                   Plaintiff,          )
12                                     )  1.   BREACH OF CONTRACT
    vs.                                )
13                                     )  2.   BAD   FAITH   BREACH   OF   IMPLIED
    MINNESOTA LIFE, a Delaware         )       COVENANT OF GOOD FAITH AND FAIR
14  corporation; TRIBUNE COMPANY, a    )       DEALING
    Delaware corporation, and DOES 1-50, )
15                                     )  3.   PROMISSORY ESTOPPEL AS THIRD PARTY
                   Defendants.         )       BENEFICIARY AS TO TRIBUNE COMPANY
16                                     )
                                       )  4.   PROMISSORY ESTOPPEL AS THIRD PARTY
17  _____   )       BENEFICIARY AS TO MINNESOTA LIFE

18       Plaintiff DEBORAH SCHONBAK (hereinafter "Plaintiff") complains and alleges upon

19  information and belief as follows:

20                           **INTRODUCTION**

21       1.    Plaintiff brings this action to recover proceeds owed to her as the beneficiary of a

22  supplemental life insurance policy procured by her late husband, RAYMOND J. SCHONBAK

23  (hereinafter "SCHONBAK"), through his employer TRIBUNE COMPANY'S (hereinafter

24  "TRIBUNE"), group insurance plan offered by MINNESOTA LIFE (hereinafter "MN LIFE").

25                        **JURISDICTION AND VENUE**

26       2.    This Court has jurisdiction over this action pursuant to the California Constitution,

27  Article VI, section 10, which grants the Superior Court, "Original jurisdiction in all causes except

28  those given by statute to other courts."

----------
Complaint

3.      This Court has jurisdiction over each defendant because upon information and belief, each party is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

4.      Venue as to each defendant is proper in this judicial district pursuant to California Code of Civil Procedure §§395(a) and 395.5 as a portion of the acts complained of herein occurred in the County of San Diego.  The injuries to Plaintiff occurred in the County of San Diego.  Each defendant either owns, maintains offices, transacts business, has an agent or agents within the County of San Diego, or otherwise is found within the County of San Diego.

**THE PARTIES**

5.      Plaintiff is an individual and a resident of the State of Georgia.  Plaintiff is the widow of SCHONBAK, the insured, and the named beneficiary of the disputed MN LIFE supplemental life insurance policy.  At all times relevant to SCHONBAK's procurement of the MN LIFE supplemental life insurance policy and continuing until SCHONBAK's death, and the resulting obligation of Defendants to pay the supplemental life insurance policy death benefit to Plaintiff, both SCHONBAK and Plaintiff were residents of San Diego, California.

6.      MN LIFE is a Delaware corporation, with its principal place of business in Minnesota.  MN LIFE transacts substantial business in the State of California with numerous businesses and individuals, including TRIBUNE and SCHONBAK.

7.      TRIBUNE is a Delaware corporation, with its principal place of business in Illinois.  TRIBUNE transacts substantial business in the State of California concerning various types of media and broadcasting.

8.      The true names and capacities, whether individual, corporate, partnership, associate or otherwise of defendant DOES 1 through 50, inclusive, are unknown to Plaintiff who therefore sues Defendant by such fictitious names pursuant to California Code of Civil Procedure section 474.

/////

/////

----------
Complaint                                      -2-

1 | Plaintiff will either seek leave to amend this Complaint or file a DOE statement to allege the true

2 | names and capacities of DOES 1 through 50, inclusive, when they are ascertained. MN LIFE,

3 | TRIBUNE, and DOES 1 through 50 may collectively be referred to as "Defendants."

4 |        9.     Plaintiff is informed and believes, and based upon that information and belief alleges,

5 | that each of the defendants named in this Complaint, including DOES 1 through 50, are responsible

6 | in some manner for one or more of the events that proximately caused the injuries and damages

7 | hereinafter alleged.

8 |       10.     Plaintiff is informed and believes, and based upon that information and belief alleges,

9 | that each of the defendants named in this Complaint, including DOES 1 through 50, inclusive, are,

10 | and at all times mentioned herein were, the agent, servant, alter ego, and/or employee of each of the

11 | other defendants and that each defendant was acting within the course of scope of his, her, or its

12 | authority as the agent, servant and/or employee of each of the other defendants. Consequently, all

13 | of the defendants are jointly and severally liable to Plaintiff for the damages incurred as a proximate

14 | result of their conduct.

15 |                                 **FACTUAL ALLEGATIONS**

16 |       11.     SCHONBAK was employed by the TRIBUNE from March 24, 2008 until his death

17 | on November 20, 2013. At all times during such employment, SCHONBAK and Plaintiff were

18 | residents of San Diego, California.

19 |       12.     Pursuant to the employee benefit program at TRIBUNE, SCHONBAK was entitled

20 | to a guaranteed issue amount of group basic life insurance offered through MN LIFE (policy number

21 | 33803). A true and correct copy of the group life insurance policy is lodged herewith as Exhibit "1"

22 | and incorporated herein by this reference. At some point during his employment, SCHONBAK

23 | enrolled in the basic life insurance plan.

24 |       13.     On or around December 2, 2012, SCHONBAK, who had been diagnosed with

25 | pancreatic cancer on or about January 4, 2012, applied for voluntary enrollment in TRIBUNE's

26 | optional employee group supplemental life insurance plan offered by MN LIFE through the

27 | aforementioned group life insurance plan. SCHONBAK applied for the optional supplemental life

28 | /////

1  insurance in the amount of $1,507,000.00 in order to provide for the lifetime financial security of

2  his wife in the event of his death.

3      14.    Accordingly, SCHONBAK named Plaintiff as the beneficiary on his optional

4  supplemental life insurance policy application with MN LIFE.

5      15.    Pursuant to the guidelines established by MN LIFE, SCHONBAK submitted an

6  Evidence of Insurability form along with his application for optional supplemental insurance. A true

7  and correct copy of the Evidence of Insurability is lodged herewith as Exhibit "2" and incorporated

8  herein by this reference. The Evidence of Insurability form clearly states that SCHONBAK had been

9  diagnosed with pancreatic cancer on January 4, 2012.  The form also states that SCHONBAK's

10  cancer treatment consisted of chemotherapy, radiation, and whipple surgery.

11      16.    Upon receipt of SCHONBAK's Evidence of Insurability form, MN LIFE calculated

12  the premium on the supplemental life insurance request and submitted the billing information to

13  TRIBUNE.   Thereafter, TRIBUNE began to deduct the appropriate premium amount for

14  SCHONBAK's optional supplemental life insurance from his paychecks.  True and correct copies

15  of miscellaneous check stubs received by SCHONBAK during the period January 6, 2013 through

16  September 6, 2013, which show a deduction for the supplemental life premium in amounts from

17  $855.51 to $1,711.02 are lodged herewith as Exhibits "3-A", "3-B", "3-C", "3-D", "3-E", "3-F" and

18  "3-G" and incorporated herein by this reference. Those deductions are representative of the regular

19  payroll deduction made by TRIBUNE to fund SCHONBAK's premium payment for the

20  supplemental life policy.

21      17.    Based on MN LIFE's calculations, beginning in January of 2013, TRIBUNE deducted

22  $885.51 from each of SCHONBAK's bi-monthly paychecks for his supplemental life insurance

23  policy premium owed to MN LIFE.  In total, over a period of nearly ten (10) months before his

24  passing, SCHONBAK paid, via TRIBUNE's automatic deductions, $19,676.73 in premiums to MN

25  LIFE for his supplemental life insurance policy.  MN LIFE accepted all of SCHONBAK's premium

26  payments.

27      18.    SCHONBAK was acutely aware of the aforementioned automatic deductions. In fact,

28  following his cancer diagnosis in January 2012, SCHONBAK became nearly obsessive with costs

1   and expenditures, all in an effort to ensure that he was saving enough so that his soon-to-be widow

2   would be financially stable for the remainder of her life.

3       19.     Over the course of his employment, SCHONBAK had developed a friendship with

4   Barbara Lopez-Nash ("Lopez-Nash"), the Regional Director of Human Resources at TRIBUNE.

5   Following his cancer diagnosis and in an abundance of caution, SCHONBAK habitually confirmed

6   through Ms. Nash that his benefits, including his basic and, eventually, his supplemental life

7   insurance, were in-force and that his premium payments and other benefit account contributions were

8   funded.

9       20.     In fact, Ms. Lopez-Nash held SCHONBAK and his wife in such high regard that the

10  day before he died, Ms. Lopez-Nash made the trip from the TRIBUNE office in Los Angeles,

11  California to SCHONBAK's hospital in San Diego, California for the express dual purpose of saying

12  goodbye to a dear friend and confirming that his benefits were intact.

13      21.     As was his wont, SCHONBAK, on his death bed, specifically requested that Ms.

14  Lopez-Nash confirm that all of his employee benefit accounts, including both of his group life

15  insurance policies, were intact. He further requested that Ms. Lopez-Nash confirm that his wife was

16  the beneficiary on all his accounts including both of his group life insurance policies.

17      22.     Ms. Lopez-Nash contacted TRIBUNE HR Department to make such confirmation.

18  She received assurances from TRIBUNE HR Department that SCHONBAK's employee benefit

19  accounts, including both of his group life insurance policies, were intact and Plaintiff was named as

20  the beneficiary on each. She relayed the information to SCHONBAK.

21      23.     SCHONBAK died on November 20, 2013.

22      24.     Prior to the death of SCHONBAK, all premiums due had been paid and SCHONBAK

23  had performed all obligations under the MN LIFE supplemental life insurance policy.  Defendants,

24  and each of them, at all times knew that SCHONBAK had paid all premiums due under the

25  supplemental life insurance policy and had accepted those premiums in accordance with the policy.

26      25.     On November 25, 2013, Plaintiff received a letter from Jackie Revell, the Benefits

27  Representative from TRIBUNE, stating that SCHONBAK had been insured under TRIBUNE's

28  employee group coverage under both the TRIBUNE's basic life insurance plan for $302,000.00 and

----------
Complaint                                      -5-

1   the supplemental life insurance plan for an additional $1,507,000.00. A true and correct copy of the

2   November 25, 2013 letter from TRIBUNE to Plaintiff is lodged herewith as Exhibit "4" and

3   incorporated herein by this reference.

4       26.   Plaintiff made a proper and timely claim for the benefits due under the MN LIFE

5   supplemental life insurance policy on the life of SCHONBAK.

6       27.   On or about January 6, 2014, Plaintiff received a letter of the same date from MN

7   LIFE denying Plaintiff's claim due to his cancer diagnosis. A true and correct copy of the January

8   6, 2014 letter from MN LIFE to SCHONBAK is lodged herewith as Exhibit "5" and incorporated

9   herein by this reference. According to the letter, MN LIFE had deemed SCHONBAK uninsurable

10  based on his pancreatic cancer disclosure on his application.

11      28.   Moreover, the letter stated that SCHONBAK was sent two (2) separate, distinct

12  insurance denial notifications by mail. Both were purportedly dated December 4, 2012. True and

13  correct copies of the December 4, 2012 letters from MN LIFE to SCHONBAK are lodged herewith

14  as Exhibits "6-A" and "6-B" and incorporated herein by this reference.  The notifications were

15  intended to inform SCHONBAK that MN LIFE was declining his application for the supplemental

16  life insurance based on his history of pancreatic cancer.  SCHONBAK never received any such

17  declination notification. Plaintiff is informed, believes and alleges thereon that MN LIFE did not

18  draft the notifications contemporaneous to SCHONBAK's application. Rather, she alleges that the

19  notifications were drafted after SCHONBAK's death in an attempt by MN LIFE to avoid payment

20  of the death benefit proceeds.

21      29.   Furthermore, MN LIFE contends that TRIBUNE was also notified of SCHONBAK's

22  declination in some sort of contemporaneous communication made by MN LIFE to TRIBUNE. (The

23  type, date and whereabouts of the communication are unknown.) Plaintiff is informed, believes and

24  alleges thereon that MN LIFE did not provide TRIBUNE with such communication because MN

25  LIFE never intended to decline SCHONBAK until after his death. Plaintiff alleges that such a

26  communication does not exist.

27      30.   On or about April 24, 2014, Plaintiff formally appealed MN LIFE's decision to deny

28  the death benefit claim. MN LIFE acknowledged receipt of the formal appeal in a letter dated April

----------
Complaint                                    -6-

1    30, 2014.  On July 28, 2014, MN LIFE affirmed its decision, stating that SCHONBAK had been

2    denied coverage under the supplemental life insurance policy because of his previously diagnosed

3    pancreatic cancer.  MN LIFE also informed Plaintiff that neither an administrative error nor the

4    collection of premiums creates coverage in this situation.

5         31.    MN LIFE's refusal to pay out the supplemental life insurance policy has caused

6    Plaintiff to suffer financially and emotionally.  Plaintiff has suffered severe emotional distress as a

7    result of MN LIFE's refusal to pay out the proceeds promised to Plaintiff.  The constant haggling

8    with MN LIFE and TRIBUNE over the supplemental life insurance policy has prevented Plaintiff

9    from properly grieving for her husband and has also caused emotional and mental distress, anxiety,

10   frustration, humiliation, and indignity.

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**
**(Against MN LIFE and DOES 1 through 50)**

14        32.    Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all

15   of the preceding paragraphs of this Complaint.

16        33.    MN LIFE breached their obligation under the contract with SCHONBAK in that they

17   have refused to pay the death benefit of the supplemental life insurance policy to the third party

18   beneficiary of the contract, Plaintiff herein.

**SECOND CAUSE OF ACTION**

**BAD FAITH BREACH OF IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**
**(Against MN LIFE and DOES 1 through 50)**

22        34.    Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all

23   of the preceding paragraphs of this Complaint.

24        35.    At all times herein material, MN LIFE knew, or in the exercise of good faith

25   reasonably should have known, that Plaintiff was legally entitled to recover the death benefit under

26   the aforementioned MN LIFE supplemental life insurance policy on the life of SCHONBAK.

27        36.    MN LIFE further knew, or in the exercise of good faith reasonably should have

28   known, that the policy benefit was due to be paid to Plaintiff.  MN LIFE nevertheless maliciously,

1  intentionally, and oppressively conducted themselves willfully and wrongfully and refused, and

2  failed, to pay the benefit of the MN LIFE supplemental life insurance policy to Plaintiff, despite the

3  fact that the benefit under the policy was due and payable to the Plaintiff.

4      37.    MN LIFE unreasonably failed to pay Plaintiff's claim for her death benefit under the

5  MN LIFE supplemental life insurance policy.  All acts of MN LIFE, as herein alleged, were done

6  with the prior approval of, with the knowledge of, and/or under the express direction or ratification

7  of an officer, director, or managing agent of MN LIFE.

8      38.   As a proximate result of MN LIFE's wrongful conduct, Plaintiff has been denied the

9  receipt of her lawful MN LIFE supplemental life insurance policy death benefit.

10     39.    MN LIFE's actions in withholding and refusing to pay the MN LIFE supplemental

11 life insurance policy death benefit are unreasonable and in bad faith.

12     40.    Plaintiff is informed and believes, and thereon alleges, that MN LIFE's actions were

13 part of a practice of MN LIFE to "deny, delay, and defend." Plaintiff further alleges that MN LIFE's

14 practice is designed, among other things, to wrongfully withhold payment of claims with the intent

15 of ignoring the interest of the insured and the beneficiaries of their insureds.

16     41.    As a direct and proximate result of MN LIFE's wrongful conduct, Plaintiff has

17 sustained severe and serious injury including, but not limited to, emotional and mental distress,

18 anxiety, frustration, humiliation, and indignity, all to Plaintiff's damage in a sum within the

19 jurisdiction of this court and to be shown according to proof.

20                        **THIRD CAUSE OF ACTION**

21          **PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY**
            **(Against TRIBUNE and DOES 1 through 50)**

22

23     42.    Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all

24 of the preceding paragraphs of this Complaint.

25     43.    SCHONBAK enrolled in TRIBUNE's employee group insurance plan for the sole

26 benefit of his wife, Plaintiff herein.

27     44.    Between January 2013 and November 2013, TRIBUNE made repeated

28 representations that SCHONBAK had properly enrolled himself into MN LIFE's supplemental life

1  insurance policy for an amount of $1,507,000.00.  TRIBUNE deducted SCHONBAK's premium
2  payments for the supplemental life insurance policy and paid them to MN LIFE from the time he
3  enrolled until his death.  TRIBUNE's HR Department assured SCHONBAK that his MN LIFE
4  supplemental life insurance policy was in full force and effect and named Plaintiff as the beneficiary.
5  SCHONBAK relied on TRIBUNE's deduction from his paycheck and MN LIFE's acceptance of
6  TRIBUNE's payment of those deductions.  Even after SCHONBAK's death, TRIBUNE informed
7  Plaintiff that SCHONBAK had been insured under TRIBUNE's employee group coverage under the
8  company basic plan for $302,000.00 and the supplemental life insurance plan for an additional
9  $1,507,000.00.

10       45.     TRIBUNE knew, or reasonably should have known, that SCHONBAK would be
11  reasonably induced to rely on TRIBUNE's several representations that his MN LIFE supplemental
12  life insurance policy was in full force and effect and that Plaintiff was the named beneficiary of the
13  policy.

14       46.     TRIBUNE knew, or reasonably should have known, that the representations made
15  to SCHONBAK were false.   TRIBUNE knew, or reasonably should have known, that
16  SCHONBAK's MN LIFE supplemental life insurance policy was not in full force and effect at the
17  time of his death.  As a direct and proximate result of TRIBUNE's false representations, which were
18  reasonably relied upon by SCHONBAK, Plaintiff, as the third party beneficiary of the insurance
19  policy, sustained damages in the amount of $1,507,000.00, as well as other damages according to
20  proof.

21                          **FOURTH CAUSE OF ACTION**

22               **PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY**
                  **(Against MN LIFE and DOES 1 through 50)**
23

24       47.     Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all
25  of the preceding paragraphs of this Complaint.

26       48.     MN LIFE accepted and continued to accept premiums paid on behalf of SCHONBAK
27  despite having allegedly declined his supplemental life coverage.

28  /////

----------
Complaint                                      -9-

49.    MN LIFE knew, or reasonably should have known, that SCHONBAK would be reasonably induced to rely upon MN LIFE's acceptance of said premiums as evidence that his supplemental life insurance policy was in force.

50.    MN LIFE knew, or reasonably should have known, that TRIBUNE's representations to SCHONBAK were false. MN LIFE knew, or reasonably should have known, that SCHONBAK's supplemental life insurance policy was not in full force and effect at the time of his death. As a direct and proximate result of TRIBUNE's false representations, which were reasonably relied upon by SCHONBAK, Plaintiff, as the third party beneficiary of the insurance policy, sustained damages in the amount of $1,507,000.00, as well as other damages according to proof.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

### FIRST CAUSE OF ACTION

1.    Benefits due under the MN LIFE supplemental life insurance policy;

2.    Consequential damages in a sum according to proof;

3.    For attorney fees in an amount to be shown according to proof;

4.    For monetary interest provided by law; and

5.    Costs of suit and for such other and further relief as the court deems proper.

### SECOND CAUSE OF ACTION

1.    General damages in a sum according to proof;

2.    Benefits due under the MN LIFE supplemental life insurance policy;

3.    Consequential damages in a sum according to proof;

4.    Punitive damages in an amount to be shown according to proof;

5.    For attorney fees in an amount to be shown according to proof;

6.    For monetary interest provided by law; and

7.    Costs of suit and for such other and further relief as the court deems proper.

### THIRD CAUSE OF ACTION

1.    Benefits due under the MN LIFE supplemental life insurance policy;

2.    Consequential damages in a sum according to proof;

3.    For attorney fees in an amount to be shown according to proof;

4.    For monetary interest provided by law; and

5.    Costs of suit and for such other and further relief as the court deems proper.

**FOURTH CAUSE OF ACTION**

1.    Benefits due under the MN LIFE supplemental life insurance policy;

2.    Consequential damages in a sum according to proof;

3.    For attorney fees in an amount to be shown according to proof;

4.    For monetary interest provided by law; and

5.    Costs of suit and for such other and further relief as the court deems proper.

Dated: 3/30/15

                            HASKETT & ASSOCIATES
                              a Professional Corporation

By: _____
             J.B. HASKETT
             Attorneys for Plaintiff

## DEMAND FOR TRIAL BY JURY

Plaintiff DEBORAH SCHONBAK hereby demands a trial by jury in her COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (3) PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY AS TO TRIBUNE COMPANY AND (4) PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY AS TO MINNESOTA LIFE.

Dated: 3/30/15

HASKETT & ASSOCIATES
a Professional Corporation

By: _____
J.B. HASKETT
Attorneys for Plaintiff

1

## **VERIFICATION**

2

3    I, THE UNDERSIGNED, DECLARE:

4    I am the Plaintiff in the above-entitled matter. I have read the COMPLAINT FOR

5   DAMAGES (1) BREACH OF CONTRACT; (2) BAD FAITH BREACH OF IMPLIED

6   COVENANT OF GOOD FAITH AND FAIR DEALING; (3) PROMISSORY ESTOPPEL AS

7   THIRD PARTY BENEFICIARY AS TO TRIBUNE COMPANY AND (4)  PROMISSORY

8   ESTOPPEL AS THIRD PARTY BENEFICIARY AS TO MINNESOTA LIFE and know the

9   contents thereof. It is true of my own knowledge except as to those matters that are stated therein on

10   information and belief and, as to those matters, I believe them to be true.

11    I declare under penalty of perjury under the laws of the State of California that the foregoing

12   is true and correct.   Executed this _28_ day of _March_  , 2015, in

13   _Savannah_ , Georgia.

14

15                          _Deborah Schonbak_
                                DEBORAH SCHONBAK

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEMAND FOR TRIAL BY JURY

Plaintiff DEBORAH SCHONBAK hereby demands a trial by jury in her COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (3) PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY AS TO TRIBUNE COMPANY AND (4) PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY AS TO MINNESOTA LIFE.

Dated: 3/30/15

HASKETT & ASSOCIATES
a Professional Corporation

By: _____
J.B. HASKETT
Attorneys for Plaintiff

1  STEVEN P. HASKETT, ESQ. (66144)
   J.B. HASKETT, ESQ. (290683)
2  HASKETT & ASSOCIATES, a P.C.
   a Professional Corporation
3  701 "B" Street, Suite 1115
   San Diego, CA 92101
4  Telephone: (619) 231-3737
   Facsimile: (619) 233-1223
5
   Attorneys for: DEBORAH SCHONBAK
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF SAN DIEGO**

10 D E B O R A H   S C H O N B A K ,  )  CASE NUMBER   37-2015-00011687-CU-BC-CTL
   individually,                       )
11                                     )
                  Plaintiff,           )
12                                     )
   vs.                                 )   NOTICE OF LODGMENT
13                                     )
   MINNESOTA  LIFE,  a  Delaware       )
14 corporation; TRIBUNE COMPANY, a     )
   Delaware corporation, and DOES 1-50, )
15                                     )
                  Defendants.          )
16                                     )
                                       )
17 _____  )

18        Plaintiff, DEBORAH SCHONBAK, hereby lodges with this Court the following Exhibits

19 referenced in the COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BAD FAITH

20 BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (3)

21 PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY AS TO TRIBUNE COMPANY

22 AND (4) PROMISSORY ESTOPPEL AS THIRD PARTY BENEFICIARY AS TO MINNESOTA

23 LIFE which is filed herewith.

24        Exhibit "1" - MN LIFE policy number 33803

25        Exhibit "2" - Evidence of Insurability form

26        Exhibits "3-A", "3-B", "3-C", "3-D", "3-E", "3-F" and "3-G" - miscellaneous

27 check stubs received by SCHONBAK during the period January 6, 2013 through September 6, 2013

28        Exhibit "4" - November 25, 2013 letter from TRIBUNE to Plaintiff

------------------
Notice of Lodgment

1     Exhibit "5" - January 6, 2014 letter from MN LIFE to Plaintiff

2    Exhibits "6-A" and "6-B" - December 4, 2012 letters from MN LIFE to SCHONBAK

3   **Petitioner requests that this Court dispose of said exhibits upon the conclusion of this**

4 **hearing by destroying same.**

5 Dated: ___3_/_30_/_15___     HASKETT & ASSOCIATES
             a Professional Corporation

6

7            By:_____

8             J.B. HASKETT, Attorney for
             DEBORAH SCHONBAK

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# EXHIBIT "1"

## MINNESOTA LIFE

**EMPLOYEE GROUP TERM LIFE
CERTIFICATE OF INSURANCE**

Minnesota Life Insurance Company • 400 Robert Street North • St. Paul, Minnesota 55101-2098

Revised May 1, 2013

**POLICYHOLDER: Tribune**

**POLICY NUMBER: 33803-G**

## Read Your Certificate Carefully

You are insured under the group policy shown on the specifications page attached to this certificate. This certificate summarizes the principal provisions of the group policy that affect you. The provisions summarized in this certificate are subject in every respect to the group policy. You may examine the group policy at the principal office of the policyholder during regular working hours.

## Right to Cancel

It is important to us that you are satisfied with this certificate after it is issued. If you are not satisfied with this certificate, you may cancel it by delivering or mailing a written notice or sending a telegram to Minnesota Life Insurance Company (Minnesota Life), 400 Robert Street North, St. Paul, Minnesota 55101-2098 and returning the certificate before midnight of the 30th day after you received this certificate.

Notice given by mail and return of the certificate by mail are effective on being postmarked, properly addressed, and postage prepaid. If you return this certificate, you will receive, within 10 days of the date we receive a notice of cancellation, a full refund of any premiums you have paid. Upon cancellation of this certificate, it will be void as if it had never been issued.

Secretary                                                President

### TABLE OF CONTENTS

Definitions.................................................................. 2
General Information ................................................... 2
Premiums .................................................................. 3
Death Benefit............................................................. 4

Termination................................................................ 5
Conversion Right ....................................................... 5
Additional Information................................................ 6

**GROUP TERM LIFE CERTIFICATE OF INSURANCE**

## CERTIFICATE SPECIFICATIONS PAGE

| GENERAL INFORMATION | Non-Union Groups and Union Groups as named below Revised March 15, 2012 |
|---|---|

**POLICYHOLDER:** Tribune      **POLICY NO.:** 33803-G

**ASSOCIATED COMPANIES:** All subsidiaries and affiliates reported to Minnesota Life by the policyholder for inclusion in the policy.

**POLICY EFFECTIVE DATE:** September 1, 2009

This certificate and/or certificate specifications page replaces any and all certificates and/or certificate specifications pages previously issued to you under the group policy. Please replace any certificate and/or certificate specifications page previously issued to you with this new certificate and/or specifications page.

**GROUP:** The group is composed of all active employees and certain retirees of the policyholder and its associated companies listed below who are U.S. citizens or residents regularly working and living in the U.S.(including Foreign Correspondents) and Tribune Media Services (TMS) employees who are not U.S. citizens and are based in countries other than the U.S. Also included is a group of inactive employees who were members of an eligible class prior to 1/1/2009 and are still members of an eligible class, but who were excluded from coverage under the prior insurer's plan.

- Full-time and Part-time Non-Union Employees
- WGN-TV Newspersons AFTRA
- WGN-TV Operating Engineers IUOE #399
- WGN-AM and WGN-TV Engineers and Newswriters IBEW Local #1220
- Chicago Tribune Machinists IAM #126
- Chicago Tribune Pressroom GCIU #7
- Morning Call GCIU Pressroom #160M
- WPHL IBEU #98 Technicians
- KTLA IATSE Engineers
- Los Angeles Times Pressmen GCC
- WPIX Directors DGA
- WPIX Newspersons AFTRA, Stagehands IATSE #1, Newswriters Guild TNG #3
- Foreign Correspondents (**All members of the foreign staff based abroad; foreign editors while traveling abroad; all editorial employees on a foreign assignment lasting one month or longer; all editorial employees traveling in a "war zone" (as designated by the U.S. Department of State)**
- Tribune Media Services (TMS) Employees

**ENROLLMENT PERIOD:** Not applicable for noncontributory insurance; 31 days from the first day of eligibility for contributory insurance.

**WAITING PERIOD:** Basic insurance – first day of the month following the date the employee begins continuous employment

Supplemental insurance - first day of the month following the date the employee begins continuous employment

**MINIMUM HOURS PER WEEK REQUIRED:** At least 35 hours per week

**CERTIFICATE EFFECTIVE DATE:** The date that the certificate holder becomes insured under the group policy.

**PLAN OF INSURANCE**

## EMPLOYEE BENEFIT SCHEDULE

**EMPLOYEE TERM LIFE INSURANCE:**

**Basic Life Insurance**

| **Eligible Class** | **Amount of Insurance** |
|---|---|
| All employees (except for foreign-based Tribune Services (TMS) employees) | One times basic annual earnings rounded up to the next higher $1,000, if not already a multiple thereof, subject to a maximum of $2,000,000.

Upon assignment, coverage for a foreign correspondent employee shall increase to 3 times basic annual earnings not to exceed a maximum of $2,000,000, without evidence of insurability. Coverage reverts back to one times basic annual earnings upon return to the U.S. |
| Foreign-based Tribune Media Services  (TMS) employees: | Amounts as shown on the census supplied by the policyholder |

**Supplemental Life Insurance**
An employee may choose among eight different amounts of supplemental insurance, as follows:

| **Eligible Class** | **Amount of Insurance** |
|---|---|
| All employees (except for foreign-based Tribune Services (TMS) employees) | One, two, three, four, five, six, seven or eight times basic annual earnings, multiplied and then rounded to the next higher $1,000 if not already a multiple thereof.*

Upon assignment, a foreign correspondent employee may purchase additional supplemental coverage up to 8 times annual earnings, subject to guaranteed issue requirements specified below. |
| Foreign-based Tribune Media Services  (TMS) employees: | None |

*The combined amount of basic and supplemental insurance for an employee shall not exceed $5,000,000.

### GENERAL PROVISIONS FOR EMPLOYEE INSURANCE

**AGE REDUCTIONS:**                     The amount of basic and supplemental insurance on an employee age 65 or older shall be a percentage of the amount otherwise provided by the plan of insurance applicable to such employee in accordance with the following table:

| Age of Employee | Amount of Insurance |
|---|---|
| 65 | 65% |
| 70 | 50% |

Age reductions will apply on January 1 of the year following an insured employee's 65th and 70th birthdays.

**RETIREMENT REDUCTIONS for all Non-Union and Union employees who, at retirement, are age 55 with at least 10 years of service:**

Basic coverage reduces to $10,000

Morning Call GCIU Pressroom #160M: Basic coverage reduces to a maximum of $12,500.

All supplemental insurance terminates at retirement, except as provided for under the portability provision.

**RETIREMENT for all Non-Union and Union employees who do not meet the age/service requirements above or whose employer class does not offer retiree benefits:**

All basic insurance terminates at retirement. All supplemental insurance terminates at retirement, except as provided for under the portability provision.

**CONTRIBUTORY/NONCONTRIBUTORY:**

Basic insurance is noncontributory insurance for all Classes except for Chicago Tribune Machinists IAM #126, Chicago Tribune Pressroom GCIU #7, and WGN-AM and WGN-TV Engineers & Newswriters IBEW Local #1220. Basic insurance for employees of WGN-TV Newspersons AFTRA is contributory for the first 5 years, then non contributory thereafter.

Supplemental insurance is contributory insurance for all Classes.

**GUARANTEED ISSUE AMOUNT:**

Guaranteed issue is the maximum amount of insurance an employee can receive without evidence of insurability when first eligible under the plan provided enrollment is made within the enrollment period. The amounts are as follows:

For basic insurance:

All basic insurance is guaranteed issue.

For supplemental

For employees in an eligible class immediately prior to the effective date of the group policy:

An amount equal to the amount of contributory insurance for which the employee was insured under the prior carrier's group policy on the day immediately preceding the effective date of the group policy or the amount of insurance an inactive employee had prior to 1/1/2009 if they were members then of an eligible class and are still members of an eligible class.

For employees who first become eligible after the effective date of the group policy:

The lesser of 3 times base pay rounded to the next higher $1,000 and $750,000.

Coverage increase due to salary changes are guaranteed to the plan maximum.

**FOREIGN CORRESPONDENT ASSIGNMENT CHANGES:**

Basic coverage increases from one times annual earnings to three times annual earnings on the date the employee begins travel for purposes of reaching the destination of his/her job assignment outside the U.S. The employee's coverage reverts back to one times annual earnings on the date the employee returns to the U.S. and arrives at either his/her residence or regular place of employment with the policyholder. If the employee deviates from direct travel for return to either destination, then coverage reverts on the earlier date of: his/her transport arrival within the U.S.; his/her transport arrives away from his/her permanent residence if temporarily living outside the U.S.; or the 16th day after the end of his/her job assignment if his/her travel begins later than within 15 days following the end of his/her job assignment.

Upon assignment, an employee classified as a foreign correspondent may elect an amount of supplemental insurance up to eight times their salary, not exceed a maximum of $5,000,000 when combined with basic insurance. All increases are subject to evidence of insurability.

| | |
|---|---|
| **ONE TIME OPEN ENROLLMENT for January 1, 2010:** | There is a one-time open enrollment available to employees in all nonunion and union classes. |
| | During this enrollment: |
| | An employee may apply for one level of coverage  up to $750,000 without evidence of insurability: |
| | The employee may elect or increase spouse/domestic partner life coverage up to $25,000 without evidence of insurability |
| | Any child life election is guaranteed issue without evidence of insurability |
| | Coverage applied for during this enrollment will become effective on January 1, 2010, subject to the actively at work requirement. |
| | This enrollment offer is not available to employees who were previously declined coverage. |
| **FUTURE ANNUAL ENROLLMENTS:** | Evidence of insurability is required for any new elections or increases in employee supplemental insurance. |
| | Employees may elect or increase spouse/domestic partner insurance up to $25,000 without evidence of insurability (this includes elections from $0 to $10,000 or $0 to $25,000. |
| | All child coverage elected is guaranteed issue, without evidence of insurability. |
| **EVIDENCE OF INSURABILITY:** | Evidence of insurability is required as stated in the policy and for an amount of insurance greater than the guaranteed issue amount. |
| **EFFECTIVE DATE OF INCREASES AND DECREASES DUE TO CHANGE IN ELIGIBLE CLASS OR EARNINGS:** | The date of the change in eligible class. |
| | Changes due to salary increases shall take effect on the January 1 that coincides with or next follows the salary increase. |
| | All increases are subject to the actively at work requirement. |
| | Decreases shall take effect on the January 1 coinciding with or next following the date of the decrease. |

<div align="center">

**DEPENDENTS BENEFIT SCHEDULE**

</div>

No dependent coverage for Los Angeles Times Pressman GCC, WPIX Directors DGA and WPIX Newspersons AFTRA, Stagehands IATSE #1, Newswriters Guild TNG #3.

**DEPENDENTS TERM LIFE INSURANCE:**

| Eligible Class | Amount of Life Insurance |
|---|---|
| Spouse/Domestic Partner: | $10,000, $25,000, $50,000, $100,000, $150,000 as elected by the employee. Coverage amount elected cannot exceed 100% of the employee's amount of coverage. |
| Child: | $5,000, $10,000, $25,000, as elected by the employee. Coverage amount elected cannot exceed 100% of the employee's amount of insurance. |

If an employee's first eligible child dies within 31 days of birth but prior to the employee enrolling in child life coverage, a benefit of $5,000 will be paid.

## GENERAL PROVISIONS FOR DEPENDENTS INSURANCE

**AGE REQUIREMENTS:**  See Dependents Term Life Insurance Certificate Supplement for definition.

**CONTRIBUTORY/NONCONTRIBUTORY:**  Dependents insurance is contributory insurance.

**GUARANTEED ISSUE AMOUNT:**  Guaranteed issue is the maximum amount of insurance an eligible dependent can receive without evidence of insurability when first eligible under the plan provided enrollment is made within the enrollment period. The amounts are as follows:

For employees with eligible dependents immediately prior to the effective date of the group policy, the guaranteed issue amount is equal to the amount of dependents insurance for which they were insured under the prior group policy.

For employees who first become eligible for dependents insurance after the effective date of this group policy, the guaranteed issue amount is as follows:
For spouse insurance:  $25,000
For child insurance:   All child coverage is guaranteed issue no matter when applied for.

**EVIDENCE OF INSURABILITY:**  Evidence of insurability is required as stated in the certificate and for an amount of insurance greater than the guaranteed issue amount.

**EFFECT OF EMPLOYEE'S RETIREMENT:**  All dependents insurance terminates upon the employee's retirement except as provided under the portability provision.

## ADDITIONAL INFORMATION

**SUICIDE EXCLUSION FOR LIFE INSURANCE:**  Applies only to employee supplemental life insurance under this policy.

**WAIVER OF PREMIUM APPLICATION:**  Applies to contributory employee insurance.

**POLICY GRACE PERIOD:**  The policy grace period is increased from 31 days to 60 days.

## SUPPLEMENT(S) TO THE CERTIFICATE

Dependents Term Life  Applies to all classes except Los Angeles Times Pressman GCC, WPIX Directors DGA and WPIX Newspersons AFTRA, Stagehands IATSE #1, Newswriters Guild TNG #3.

Waiver of Premium  Applies to all classes except for WPIX Newspersons AFTRA, Stagehands IATSE # 1, Newswriters Guild TNG #3 and Foreign-based TMS employees.

Accelerated Benefits  Applies to all classes.

Portability  Applies to all classes except for WPIX Newspersons AFTRA, Stagehands IATSE # 1, Newswriters Guild TNG #3.

# Definitions

**age**

Attained age as of most recent birthday.

**application**

Your application for insurance under the group policy and, if required, your evidence of insurability application.

**associated company**

Any company which is a subsidiary or affiliate of the policyholder which is designated by the policyholder and agreed to by us to participate under the group policy.

**certificate effective date**

The date your coverage under this certificate becomes effective.

**contributory insurance**

Insurance for which you are required to make premium contributions.

**earnings**

Your annualized earnings times the multiple, then rounded up to the nearest thousand, received for the year immediately prior to the policy anniversary period plus any commissions for the year ending prior to the policy anniversary period. Overtime pay, bonuses, stock options and other extra compensation is excluded.

**employee**

An individual who is employed by the policyholder or by an associated company. A sole proprietor will be considered the employee of the proprietorship. A partner in a partnership will be considered an employee so long as the partner's principal work is the conduct of the partnership's business. The term employee does not include temporary employees nor corporate directors who are not otherwise employees.

**employer**

The policyholder or any designated associated companies.

**evidence of insurability**

Evidence satisfactory to us of the good health of the prospective insured and any other underwriting information we require.

**insured**

A person who is eligible for and becomes insured a

**non-work day**

A day on which you are not regularly scheduled to work, including scheduled time off for vacations, personal holidays, weekends and holidays, and approved leaves of absence for non-medical reasons.

Non-work day does not include time off for medical leave of absence, temporary layoff, employer suspension of operations in total or in part, strike, and any time off due to sickness or injury including sick days, short-term disability, or long term disability.

**noncontributory insurance**

Insurance for which you are not required to make premium contributions.

**policyholder**

The owner of the group policy as shown on the specifications page attached to this certificate.

**specifications page**

The outline which summarizes your coverage under the policyholder's plan of insurance.

**waiting period**

The period, if any, of continuous employment with the employer required prior to becoming eligible for coverage under this certificate. The waiting period is shown on the specifications page attached to this certificate.

**we, our, us**

Minnesota Life Insurance Company.

**you, your, certificate holder**

The insured.

# General Information

**What is your agreement with us?**

You are insured under the group policy shown on the specifications page attached to this certificate. Your application as defined under this certificate is attached and is a part of this certificate. This certificate summarizes the principal provisions of the group policy that affect your life insurance coverage. The provisions summarized in this certificate are subject in every respect to the group policy.

Any statements made in your application as defined in this certificate will be considered representations and not warranties. Also, any statement made will not be used to void your insurance nor defend against a claim unless the statement is contained in the application attached to your certificate.

This certificate is issued in consideration of your application and the payment of the required premium.

**Can this certificate be amended?**

Yes. We retain the right to amend this certificate at any time without your consent. Any amendment will be without prejudice to any claim incurred for benefits prior to the date of the amendment.

**Who is eligible for insurance?**

You are eligible if you:

(1) are a member of the group and of an eligible class as defined in the group policy; and
(2) work for the employer for at least the number of hours per week shown as the minimum hours per week requirement on the specifications page attached to this certificate; and
(3) have satisfied the waiting period as shown on the specifications page attached to this certificate; and
(4) meet the actively at work requirement as shown in the section entitled "What is the actively at work requirement?".

**Are retired employees eligible for insurance?**

If the policyholder's plan of insurance, as reflected in the specifications page attached to this certificate, does not specifically provide insurance for retired employees, a retired employee shall not be eligible to become insured, nor have his or her insurance continued. If the policyholder's plan of insurance specifically provides insurance for retired employees, the minimum hours per week and actively at work requirements will not apply to such persons.

**What is the actively at work requirement?**

To be eligible to become insured or to receive an increase in the amount of insurance, you must be actively at work performing your customary duties at the employer's normal place of business, or at other places the employer's business requires you to travel.

If you are not actively at work on the date coverage would otherwise begin, or on the date an increase in your amount of insurance would otherwise be effective, you will not be eligible for the coverage or increase until you return to active work. However, if the absence is on a non-work day, coverage will not be delayed provided you were actively at work on the work day immediately preceding the non-work day.

Except as otherwise provided for in this certificate, you are eligible to continue to be insured only while you remain actively at work.

**When will we require evidence of insurability?**

Evidence of insurability will be required if:

(1) the specifications page attached to this certificate states that evidence of insurability is required; or
(2) the insurance is contributory and you do not enroll within the enrollment period shown on the specifications page attached to this certificate; or
(3) the insurance for which you previously enrolled did not go into effect or was terminated because you failed to make a required premium contribution; or
(4) during a previous period of eligibility, you failed to submit required evidence of insurability or that which was submitted was not satisfactory to us; or
(5) you are insured by an individual policy issued under the terms of the conversion right section.

**When does insurance become effective?**

Insurance becomes effective on the date that all of the following conditions have been met:

(1) you meet all eligibility requirements; and
(2) if required, you apply for the insurance on forms which are approved by us; and
(3) we are satisfied with your evidence of insurability, if we require evidence; and
(4) we receive the required premium.

**Can your coverage be continued during sickness, injury, leave of absence or temporary layoff?**

Yes. The employer may continue your noncontributory insurance or allow you to continue your contributory insurance when you are absent from work due to sickness, injury, leave of absence, or temporary layoff. Continuation of your insurance is subject to certain time limits and conditions as stated in the group policy. If you stop active work for any reason, you should discuss with the employer what arrangements may be made to continue your insurance.

# Premiums

**When and how often are your premium contributions due?**

Unless the policyholder and we have agreed to some other premium payment procedure, any premium contributions you are required to make for contributory insurance are to be paid by you to the policyholder on a monthly basis. We apply premiums consecutively to keep the insurance in force.

**How is the premium determined?**

The premium will be the premium rate multiplied by the number of $1,000 units of insurance in force on the date premiums are due. The premium may also be computed by any other method on which the policyholder and we agree.

We may change the premium rate:

    (1)  on any premium due date following the expiration of any rate guarantee period provided we have given a 180 day notice prior to changing the rates; or

    (2)  anytime, if the policy terms are amended or the total amount of insurance in force changes by 20% or more.

# Death Benefit

### What is the amount of the death benefit?

The amount of the death benefit is the amount of insurance shown on the specifications page attached to this certificate.

### Can you request a change in the amount of your contributory insurance?

Yes. If the policyholder's plan of insurance, as reflected in the specifications page attached to the group policy, allows for a choice of amounts of insurance for your class, you can request an increase or a decrease in the amount of your contributory insurance within the limitations of the policyholder's plan of insurance, including any limitations on when and how often such requests may be made.

If you request an increase in the amount of your contributory insurance, we will require evidence of insurability, unless otherwise noted on the specifications page.

### When will changes in your coverage amount be effective?

Requested increases in the amount of your contributory insurance, if approved, are effective on the date we approve the increase. Requested decreases in the amount of your contributory insurance are effective on the first day of the month following our receipt of your request for a decrease, or if different, according to the administrative practices of the employer.

Increases and decreases in insurance amounts which result from a change in your eligible class or earnings will be effective as shown on the specifications page attached to this certificate.

All increases in the amount of insurance are subject to the actively at work requirement.

### When will the death benefit be payable?

We will pay the death benefit upon receipt at our home office of written proof satisfactory to us that you died while insured under this certificate. All payments by us are payable from our home office.

The death benefit will be paid in a single sum or by any other method agreeable to us and the beneficiary. We will pay interest on the death benefit from the date of your death until the date of payment. Interest will be at an

annual rate determined by us, but never less than 4% per year compounded annually, or the minimum required by state law, whichever is greater.

Payment of the death benefit will extinguish our liability under the certificate for which the death benefit has been paid.

### To whom will we pay the death benefit?

We will pay the death benefit to the beneficiary or beneficiaries. A beneficiary is named by you to receive the death benefit to be paid at your death. You may name one or more beneficiaries. You cannot name the policyholder or an associated company of the policyholder as a beneficiary.

You may also choose to name a beneficiary that you cannot change without the beneficiary's consent. This is called an irrevocable beneficiary.

If there is more than one beneficiary, each will receive an equal share, unless you have requested another method in writing. To receive the death benefit, a beneficiary must be living on the date of your death. In the event a beneficiary is not living on the date of your death, that beneficiary's portion of the death benefit shall be equally distributed to the remaining surviving beneficiaries. In the event of the simultaneous deaths of you and a beneficiary, the death benefit will be paid as if you survived the beneficiary.

If there is no eligible beneficiary, or if you do not name one, we will pay the death benefit to:

    (1)  your lawful spouse (does not include domestic partner), if living, otherwise;

    (2)  your natural or legally adopted child (children) in equal shares, if living, otherwise;

    (3)  your parents in equal shares, if living, otherwise;

    (4)  your brothers and sisters in equal shares, if living, otherwise;

    (5)  the personal representative of your estate.

### Can you add or change beneficiaries?

Yes. You can add or change beneficiaries if all of the following are true:

    (1)  your coverage is in force; and

    (2)  we have written consent of all irrevocable beneficiaries; and

    (3)  you have not assigned the ownership of your insurance.

A request to add or change a beneficiary must be made in writing. All requests are subject to our approval. A change will take effect as of the date it is signed, but will not affect any payment we make or action we take before receiving your notice.

MHC-96-13181.12

# Termination

**When does your coverage terminate?**

Your coverage ends on the earliest of the following:

    (1)  the date the group policy ends; or
    (2)  the date you no longer meet the eligibility requirements; or
    (3)  the date the group policy is amended so you are no longer eligible; or
    (4)  31 days (the grace period) after the due date of any premium contribution which is not paid; or
    (5)  the last day for which premium contributions have been paid following your written request to cease participation under this certificate.

If your coverage under the group policy terminates due to non-payment of premiums, your coverage may be reinstated if all premiums due are paid and received by us within 31 days of the date of termination and during your lifetime.

**Can your insurance be reinstated after termination?**

Yes.  When your coverage terminates because you are no longer eligible, and you become eligible again within three months after the date your coverage under this certificate terminated, your coverage may be reinstated.

Provided you are not then covered by an individual policy issued under the terms of the conversion right section, your coverage under the group policy shall be reinstated automatically, without evidence of insurability or satisfaction of any waiting period. Your amount of insurance will be that which applies to the classification to which you then belong, on the date you again become eligible.  If the policyholder's plan of insurance provides for contributory insurance under the group policy, your amount of contributory insurance will be limited to that for which you were insured immediately prior to the loss of coverage.

**When does the group policy terminate?**

The policyholder may terminate the group policy by giving us 31 days prior written notice.  We reserve the right to terminate the group policy on the earliest of the following to occur:

    (1)  31 days (the grace period) after the due date of any premiums which are not paid; or
    (2)  on any subsequent policy anniversary after the date the number of employees insured is less than any minimum established by us or as required by applicable state law; or
    (3)  180 days after we provide the policyholder with notice of our intent to terminate the group policy.

# Conversion Right

**What is the conversion right?**

You may convert this insurance to a new individual life insurance policy if all or part of your life insurance under the group policy terminates.

You may convert up to the full amount of terminated insurance if termination occurs because you move from one existing eligible class to another, or you are no longer in an eligible class.

**What is the limited conversion right?**

Limited conversion is available if, after you have been insured for at least five years, insurance is terminated because:

    (1)  the group policy is terminated; or
    (2)  the group policy is changed to reduce or terminate your insurance.

You may convert up to the full amount of terminated insurance, but not more than the maximum.  The maximum is the lesser of:

    (a)  $10,000; and
    (b)  the amount of life insurance which terminated minus any amount of group life insurance for which you become eligible under any group policy issued or reinstated by us or any other carrier within 31 days of the date the insurance terminated under the group policy.

Neither the conversion right nor the limited conversion right is available if your coverage under the group policy terminates due to failure to make, when due, required premium contributions.

Under both the conversion right and the limited conversion right, you may convert your insurance to any type of individual policy of life insurance then customarily issued by us for purposes of conversion, except term insurance. The individual policy will not include any supplemental benefits, including, but not limited to, any disability benefits, accidental death and dismemberment benefits, or accelerated benefits.

**How do you convert your insurance?**

You convert your insurance by applying for an individual policy and paying the first premium within 31 days after your group insurance terminates.  No evidence of insurability will be required.

**How is the premium for the individual policy determined?**

We base the premium for the individual policy on the plan of insurance, your age, and the class of risk to which you belong on the date of the conversion.

Minnesota Life 5
EdF72124 12-2009

### When is the individual policy effective?

The individual policy takes effect 31 days after the group insurance provided under the group policy terminates.

### What happens if you die during the 31-day period allowed for conversion?

If you die during the 31-day period allowed for conversion, we will pay a death benefit regardless of whether or not an application for coverage under an individual policy has been submitted. The death benefit will be the amount of insurance you would have been eligible to convert under the terms of the conversion right section.

We will return any premium you paid for an individual policy to your beneficiary named under the group policy. In no event will we be liable under both the group policy and the individual policy.

## Additional Information

### What if your age has been misstated?

If your age has been misstated, the death benefit payable will be that amount to which you are entitled based on your correct age. A premium adjustment will be made so that the actual premium required at your correct age is paid.

### Is there a suicide exclusion?

The specifications page attached to this certificate indicates what insurance, if any, is subject to the suicide exclusion outlined below.

When applicable, this suicide exclusion limits our liability to an amount equal to the premiums paid if you, whether sane or insane, die by suicide within two years of the effective date of your insurance.

If there has been an increase in your amount of insurance for which you were required to apply or for which we required evidence of insurability, and if you die by suicide within two years of the effective date of the increase, our liability with respect to that increase will be limited to the premiums paid and attributable to such increase.

### When does your insurance become incontestable?

Except for the non-payment of premiums, after your insurance has been in force during your lifetime for two years from the effective date of your coverage, we cannot contest your coverage. However, if there has been an increase in the amount of insurance for which you were required to apply or for which we required evidence of insurability, then, to the extent of the increase, any loss which occurs within two years of the effective date of the increase will be contestable.

Any statements you make in your application as defined under this certificate will be considered representations and not warranties. Also, any statement you make will not be used to void your insurance, nor defend against a claim, unless the statement is contained in the application attached to your certificate.

### Can your insurance be assigned?

Yes. However, we will not be bound by an assignment of the certificate or of any interest in it unless it is made as a written instrument, and you file the original instrument or a certified copy with us at our home office, and we send you an acknowledged copy.

We are not responsible for the validity of any assignment. You are responsible for ensuring that the assignment is legal in your state and that it accomplishes your intended goals. If a claim is based on an assignment, we may require proof of interest of the claimant. A valid assignment will take precedence over any claim of a beneficiary.

### Is the policyholder required to maintain records?

Yes. The policyholder is required to maintain adequate records of any information necessary for us to administer this certificate. We own the records relating to the insurance provided by this certificate, and can obtain them from the policyholder at any reasonable time.

If a clerical error is made in keeping records on the insurance under the group policy, it will not affect otherwise valid insurance. A clerical error does not continue insurance which is otherwise stopped. If an error causes a change in premium payment, we will make a fair adjustment.

### Will the provisions of this certificate conform with state law?

Yes. If any provision in this certificate, or in the provisions of the group policy, is in conflict with the laws of the state governing the certificates or the group policy, the provision will be deemed to be amended to conform to such laws.

# MINNESOTA LIFE

<div align="right">

**DEPENDENTS TERM LIFE INSURANCE
CERTIFICATE SUPPLEMENT**

</div>

Minnesota Life Insurance Company  •  400 Robert Street North  •  St. Paul, Minnesota 55101-2098

## General Information

This certificate supplement is issued in consideration of the required premium and is subject to every term, condition, exclusion, limitation, and provision of your certificate unless otherwise expressly provided for herein.

**What does this supplement provide?**

This supplement provides insurance on the lives of your eligible dependents.

**What members of your family are eligible for insurance under this supplement?**

The following members of your family are eligible for insurance under this supplement:

(1) your lawful spouse who is not legally separated from you or your domestic partner*, who is not eligible for insurance as an employee under the group policy and who meets any age requirements as shown on the specifications page attached to your certificate; and

(2) you or your spouse/domestic partner's unmarried child, including a natural child, stepchild, a legally adopted child, a child placed for adoption, or a child for whom you or your spouse/domestic partner is the legal guardian. Child also includes an eligible foster child (defined as an individual who is placed with you or your spouse/domestic partner by an authorized placement agency or by judgment, decree, or other court order). A child is eligible for coverage from live birth up to the age of 26. A child of any age is eligible if they are disabled and dependent upon you for support and maintenance. To be eligible for coverage, a child must reside within the United States.

*Domestic partner is a person of the same or opposite sex based on the following criteria:

- You and your partner have an exclusive, committed relationship of mutual caring that has lasted continuously for at least 12 months and is expected to last indefinitely

- You and your partner share a permanent residence

- Your partner is age 18 or older

- You and your partner are jointly responsible for each other's common welfare and living expense

- Your partner is not a blood relative that would prohibit legal marriage

- You and your partner sign a Declaration of Domestic Partner Affidavit and tax declaration and submit them to the Tribune Benefits Service Center

If both parents of a child qualify as eligible employees under the group policy, the child shall be considered a dependent of only one parent for purposes of this supplement.  If any child qualifies as an eligible employee under the group policy, he or she is not eligible to be insured as a dependent child.

Any dependent child who, subsequent to the effective date of this supplement, meets the requirements of this provision will become insured on the date he or she so qualifies.

**When will we require evidence of insurability?**

Evidence of insurability will be required if:

(1) the specifications page attached to your certificate states that evidence of insurability is required; or

(2) the insurance is contributory and you do not enroll for coverage under this supplement within the enrollment period shown on the specifications page attached to your certificate; or

(3) dependents insurance for which you previously enrolled did not go into effect or was terminated because you failed to make a required premium contribution; or

(4) during a previous period of eligibility, you failed to submit evidence of insurability that was required for a dependent or that which was submitted was not satisfactory to us; or

(5) the dependent is insured by an individual policy issued under the terms of the conversion right of this supplement.

**When does insurance on a dependent become effective?**

Insurance on a dependent becomes effective on the date when all of the following conditions have been met:

(1) the dependent meets all eligibility requirements; and

(2) if required, you apply for dependents coverage on forms which are approved by us; and

(3) we are satisfied with the dependent's evidence of insurability, if we require evidence; and

(4) we receive the required premium.

If a dependent (other than a newborn child) is hospitalized or confined because of illness or disease on the date his or her insurance would otherwise become effective, his or her effective date shall be delayed until he or she is

released from such hospitalization or confinement. However, in no event will insurance on a dependent be effective before your insurance is effective.

# Death Benefit

**What is the amount of life insurance on each insured dependent?**

The amount of life insurance on each insured dependent is shown on the specifications page attached to your certificate.

**To whom will we pay the death benefit?**

The death benefit payable under this supplement will be paid to you if living, otherwise to your estate.

# Termination

**When does an insured dependent's coverage under this supplement terminate?**

An insured dependent's coverage ends on the earliest of the following:

   (1) the date the dependent no longer meets the eligibility requirements; or

   (2) 31 days (the grace period) after the due date of any premium contribution which is not paid; or

   (3) the last day for which premium contributions have been made following your written request that insurance on your eligible dependents be terminated; or

   (4) the date you are no longer covered under the group policy.

You must notify us or your employer when a dependent is no longer eligible for coverage under this supplement so that premiums may be discontinued. All premiums paid for dependents who are no longer eligible for coverage under this supplement will be refunded without any payment of claim.

**When does this supplement terminate?**

This supplement will terminate on the earlier of:

   (1) the date we receive a written request from the policyholder to cancel the Dependents Term Life Insurance Policy Rider; or

   (2) the date the group policy is terminated.

# Additional Information

**What is the conversion right under this supplement?**

If an insured dependent's coverage under this supplement terminates because he or she is no longer eligible, or because of your death, or because of termination or amendment of this supplement, the insurance may be converted to a policy of individual insurance with Minnesota Life.

Conversion may be requested by you, an insured dependent of legal capacity, or the insured dependent's guardian, if applicable. All other conditions and provisions of the conversion right section of your certificate to which this supplement is attached will apply.

**Do any Waiver of Premium, Extended Benefits, or Total and Permanent Disability supplements to your certificate apply to insured dependents?**

Any Waiver of Premium, Extended Benefits, or Total and Permanent Disability supplement to your certificate will not apply to dependents covered under this supplement except as provided for herein.

If, due to your disability, your insurance is continued in force without further payment of premiums due to any Waiver of Premium, Extended Benefits, or Total and Permanent Disability supplement to your certificate, any dependents insurance provided by this supplement shall also continue in force without further payment of premiums until the dependent's eligibility terminates or until your insurance is no longer continued in force due to any such supplement to your certificate.

This provision is not applicable if the dependent's insurance has been converted under the conversion right section of this supplement, unless the converted policy is surrendered without claim except for refund of premiums.

*Dennis E. Prokopowitz*

Secretary

*Robert L. Senkler*

President

# MINNESOTA LIFE

<div align="right">

**ACCELERATED BENEFITS
CERTIFICATE SUPPLEMENT**

</div>

Minnesota Life Insurance Company  •  400 Robert Street North  •  St. Paul, Minnesota 55101-2098

Benefits received under this Accelerated Benefits Certificate Supplement may be taxable. You should seek assistance from a personal tax advisor prior to requesting an accelerated payment of death benefits.

## General Information

This certificate supplement is subject to every term, condition, exclusion, limitation, and provision of your certificate unless otherwise expressly provided for herein.

**What does this supplement provide?**

This supplement provides for the accelerated payment of either the full or a partial amount of an insured's death benefit provided under your certificate. If an insured has a terminal condition as defined in this supplement, you may request an accelerated payment of the applicable death benefit.

## Definitions

**accelerated benefit**

The amount of the death benefit we will pay if the insured is eligible under this supplement.

**death benefit**

The amount of the insured's life insurance as shown on the specifications page attached to your certificate.

**immediate family**

Your spouse, children, parents, grandparents, grandchildren, brothers and sisters, and their spouses.

**insured**

For purposes of this supplement, an insured employee, an insured spouse, or an insured dependent child.

**licensed physician**

An individual who is licensed to practice medicine or treat illness in the state in which treatment is received. This does not include you or a member of your immediate family.

## Terminal Condition

**What is a terminal condition?**

A terminal condition is a condition caused by sickness or accident which directly results in a life expectancy of twenty-four months or less.

**What evidence do we require of the insured's terminal condition?**

We must be given evidence that satisfies us that the insured's life expectancy, because of sickness or accident, is twenty-four months or less. That evidence must include certification by a licensed physician.

**Do we have the right to obtain independent medical verification?**

Yes. We retain the right to have the insured medically examined at our own expense to verify the insured's medical condition. We may do this as often as reasonably required while accelerated benefits are being considered or paid.

## Payment of Accelerated Benefit

**How do we calculate the accelerated benefit?**

We will multiply the death benefit by the accelerated benefit factor to determine the accelerated benefit available.

**How do we calculate the accelerated benefit factor?**

The accelerated benefit factor will be stated as a percentage of the insured's death benefit. When we calculate this factor, we will consider the insured's age and gender.

We will also base our calculation on certain assumptions, which we may change from time to time, including but not limited to assumptions about:

    (1) expected future premiums; and
    (2) the insured's life expectancy.

**What are the conditions for the payment of an accelerated benefit?**

We will consider the payment of an accelerated benefit, subject to all of the following conditions:

    (1) coverage must be in force and all premiums due must be fully paid; and
    (2) application must be made in writing and in a form which is satisfactory to us. We will tell you what form is required; and
    (3) you must be the sole owner of the certificate; and
    (4) the insured's insurance must not have an irrevocable beneficiary.

**Who may request an accelerated payment of the death benefit?**

You may request an accelerated payment of the insurance on your life or on the life of a spouse or dependent child insured under your certificate.

**Is the request for an accelerated benefit voluntary?**

Yes. An accelerated benefit will be made available on a voluntary basis only. An accelerated benefit under this supplement is not intended to cause an involuntary reduction of the death benefit ultimately payable to the named beneficiary. Therefore, payment of the death benefit cannot be accelerated under this supplement if the insured:

    (1) is required by law to use this option to meet the claims of creditors, whether in bankruptcy or otherwise; or

    (2) is required by a government agency to use this option in order to apply for, obtain, or keep a government benefit or entitlement.

**Is there a minimum or maximum death benefit eligible for an accelerated benefit?**

Yes. The minimum death benefit to be eligible for an accelerated benefit under this supplement is $10,000. The maximum death benefit to be eligible for an accelerated benefit is $250,000.

**Do you have to take the entire accelerated benefit?**

No. You may choose to receive a partial accelerated benefit. If you do so, the insured's remaining coverage will stay in force.

If you elect to receive only a partial accelerated benefit amount available under this supplement, the insured's remaining death benefit under the certificate must be at least $25,000.

You may reapply for the payment of the remaining amount of insurance at any time. However, we may ask for further satisfactory evidence that the insured meets all requirements for the accelerated benefit. We reserve the right to charge an additional processing charge.

**What is the effect on the insured's coverage of the receipt of an accelerated benefit?**

If you elect to accelerate the full amount of an insured's death benefit, the insured's coverage and all other benefits under the certificate and any certificate supplements for that insured will end. If such termination causes a certificate holder's covered spouse or dependent children to lose coverage, each of them will be allowed to convert any such insurance to a policy of individual life insurance according to the conversion right section of the certificate to which this supplement is attached.

If a partial accelerated benefit is chosen, coverage will remain in force and premiums will be reduced accordingly. The remaining amount of insurance under your certificate will be the full amount of insurance minus the amount of insurance that was accelerated.

**How will we pay the accelerated benefit?**

We will pay the accelerated benefit in one lump sum or in any other mutually agreeable manner.

**To whom will we pay accelerated benefits?**

All accelerated benefits will be paid to you unless you validly assign them otherwise. If you die before all payments have been made, we will pay the remainder to the beneficiary named under this certificate. Payment will be made in one lump sum which will be the present value of the payments that remain, using the interest rate we use to determine the payments.

## Termination

**When does an insured's coverage under this supplement terminate?**

An insured's coverage ends on the date the insured is no longer covered for life insurance under the group policy.

**When does this supplement terminate?**

This supplement will terminate on the earlier of:

    (1) the date we receive a written request from the policyholder to cancel the Accelerated Benefits Policy Rider; or

    (2) the date the group policy is terminated.

Secretary                           President

**Does not apply to person with portability status**

# MINNESOTA LIFE

**TERM LIFE WAIVER OF PREMIUM
CERTIFICATE SUPPLEMENT**

Minnesota Life Insurance Company  •  400 Robert Street North  •  St. Paul, Minnesota 55101-2098

## General Information

This certificate supplement is issued in consideration of the required premium and is subject to every term, condition, exclusion, limitation, and provision of your certificate unless otherwise expressly provided for herein. The specifications page attached to your certificate indicates whether this supplement applies to contributory insurance or noncontributory insurance. Coverage under this supplement will not be included in any insurance issued under the conversion right section of your certificate.

**What does this supplement provide?**

This supplement provides for waiver of premium if you become totally and permanently disabled, as defined herein, while under age 60. Upon approval of proof of such disability, your insurance, including all supplements to your certificate which were in force on the date of the onset of your disability, will be continued in force without payment of premiums during the uninterrupted continuance of the total and permanent disability.

**What is total disability?**

Total disability is a disability which occurs while your insurance is in force and which results from an accidental injury or an illness that continuously prevents you from engaging in any occupation for which you are reasonably suited by education, training, or experience. You must be under the care of a licensed physician. The licensed physician cannot be you or a member of your immediate family. For purposes of this supplement, your immediate family consists of your spouse, children, parents, grandparents, grandchildren, brothers and sisters and their spouses.

**What is permanent disability?**

Permanent disability is a total disability which has existed continuously for at least nine months.

**Do premiums have to be paid after you become disabled?**

Yes. Premiums have to be paid after you become disabled, but only until we approve your total and permanent disability claim. Continued payment prevents the possible loss of your coverage and eligibility if your claim is not approved.

**What if you convert your group life insurance to a policy of individual insurance prior to the approval of your disability claim?**

If your coverage has been converted in accordance with the conversion right section of your certificate, benefits under this supplement will apply only if the converted policy is surrendered without claim, except for refund of premiums.

**What will be considered due proof of total and permanent disability?**

You must furnish evidence satisfactory to us that your disability:

    (1) commenced while your insurance under your certificate was in force; and
    (2) meets the definition of total disability; and
    (3) commenced before your 60th birthday; and
    (4) was continuous for nine months or more.

We will, from time to time, also require additional proof satisfactory to us that you continue to be totally and permanently disabled. We may also require that you submit to one or more medical examinations at our expense.

If you die within one year of the date of onset of your disability, your beneficiary may claim benefits under this supplement even if your premium payments were discontinued and you had not submitted due proof satisfactory to us of your total disability or you were continuously disabled for less than nine months. Your beneficiary must submit due proof satisfactory to us that your total disability, which began before premium payments on your behalf were discontinued and before your 60th birthday, continued without interruption until your death.

**When must we be notified of your disability or death?**

We must receive written notice at our home office of your total disability within one year of the date of onset of such disability. However, failure to give notice within the time provided will not invalidate the claim if it is shown that notice was given as soon as reasonably possible.

We must receive written notice at our home office within one year of death that you died during the period of continuance provided by this supplement. Proof must be furnished that you continued to be totally disabled during the entire period of continuance until death. If such notice and proof are not provided within the required time frame, there shall be no liability for any payment under this supplement.

**What is the amount of insurance to be continued without payment of premium under this supplement?**

The amount of insurance continued without payment of premium shall be the amount of insurance that was in force on the date of onset of total disability.

If the group policy provides for reductions in amounts of insurance based on age or retirement, such reductions shall apply to your insurance.

**How long will insurance be continued without payment of premium?**

If you become totally and permanently disabled, insurance will be continued, without payment of premium, until the earliest of:

    (1) your 65th birthday; or
    (2) the date you die; or
    (3) the date you recover so that you are no longer totally and permanently disabled;
    (4) the date you fail to furnish proof of continued disability when requested or you refuse to submit to a required medical examination; or
    (5) the date the premium has been waived for 23 months and you are considered to reside outside the U.S. (for a period of 6 months or more).

However, if you are an employee and your certificate provides for termination of insurance at retirement, insurance provided under this supplement will also terminate when you retire, including normal or early retirement. Your retirement date shall be the earlier of:

    (1) the date you actually retire; or
    (2) your presumed normal retirement date as established by the employer's applicable retirement plan. If no such date has been established, your presumed retirement date shall be age 65.

**What happens to your insurance when the waiver of premium benefit ends?**

When the benefits under this supplement end according to the provisions of the section entitled "How long will insurance be continued without payment of premium?," the following will apply:

    (1) If you are then eligible for coverage under your certificate, your insurance may be continued under your certificate provided that premiums are paid. The first such premium payment must be made within 31 days of the date the waiver of premium benefit ends.
    (2) If you are no longer eligible for coverage under your certificate, you may convert coverage to an individual policy, as provided for under the conversion right section of your certificate.

Your insurance will end unless, within 31 days of the date benefits under this supplement end, premium payments on your behalf are resumed or you apply to convert your coverage.

**When does this supplement terminate?**

This supplement will terminate on the earlier of:

    (1) the date we receive a written request from the policyholder to terminate the Term Life Waiver of Premium Policy Rider; or
    (2) the date the group policy is terminated.

Insurance being continued without further payment of premiums in accordance with the provisions of this supplement will not end due solely to the termination of the Term Life Waiver of Premium Policy Rider or of the group policy.

*Dennis E. Prabofsky*
Secretary

*Robert L. Senkler*
President

**MINNESOTA LIFE**

TERM LIFE INSURANCE PORTABILITY
CERTIFICATE SUPPLEMENT

Minnesota Life Insurance Company  •  400 Robert Street North  •  St. Paul, Minnesota 55101-2098

# General Information

This certificate supplement is issued in consideration of the required premium and is subject to every term, condition, exclusion, limitation and provision of your certificate unless otherwise expressly provided for herein.

**What does this supplement provide?**

This supplement provides for continuation of your group life insurance if you no longer meet the eligibility requirements of your certificate, except as provided for herein.

To continue coverage under the provisions of this supplement, you must make a written request and make the first premium contribution within 31 days after insurance provided by the group policy would otherwise terminate. Evidence of insurability will not be required. Coverage provided by this supplement will then be deemed effective retroactive to the beginning of the 31-day period. This date is considered to be your portability date and you are then considered to have portability status.

**Who is eligible to continue insurance under this supplement?**

You are eligible to continue your group life insurance under the terms of this supplement if you, except as provided by this supplement, no longer meet the eligibility requirements of your certificate due to any of the following:

    (1) you terminate employment, including retirement; or

    (2) you are no longer in a class eligible for insurance or you are on a leave or layoff; or

    (3) you are totally disabled when your coverage terminates because your STD/LTD benefit period ends; or

    (4) a class or group of employees insured under the policy is no longer considered eligible and there is no successor plan for that class or group. Successor plan means an insurance policy or policies provided by us or another insurer that replaces insurance provided under the policy.

An insured spouse is eligible to continue insurance under this supplement if he or she, except as provided by this supplement, no longer meets the eligibility requirements of the group policy due to the employee's death.

You will not be eligible to request coverage under this supplement if you:

    (1) have attained the age of 70; or

    (2) have converted your insurance to an individual life policy under the terms of your certificate's conversion right section; or

    (3) were not actively at work due to sickness or injury on the day immediately preceding your portability date, unless you were totally disabled on a STD/LTD benefit; or

    (4) lose eligibility due to termination of the group policy.

**What insurance can be continued under this supplement?**

Contributory and noncontributory insurance may be continued under this supplement. If you elect to continue your own coverage according to the provisions of this supplement, you may also elect to continue contributory insurance for any other individual insured under your certificate.

If a former spouse continues his or her own coverage according to the provisions of this supplement, he or she may also elect to continue contributory insurance on any insured children, provided the employee is not otherwise insuring the children.

You may also continue coverage under all supplements to your certificate which apply to contributory insurance and by which you were insured immediately preceding your portability date.

Death benefits will be paid in accordance with the provisions of the certificate and applicable supplements with the following exception: Death benefits for a former spouse (not being continued as a supplement to the employee's coverage) shall be payable according to the Death Benefit section of the certificate and not the Death Benefit section of the Dependents Term Life Insurance Certificate Supplement. Therefore a former spouse may choose to name a beneficiary or beneficiaries to receive his or her death benefit proceeds, subject to all provisions of the Death Benefit section of the certificate, including the provisions related to payment when there are no eligible named beneficiaries.

The amount of insurance continued under this supplement for any individual will be subject to any applicable state law or regulation relating to allowable amounts of insurance.

**What is the minimum amount of insurance that can be continued under this supplement?**

The minimum amount of insurance that can be continued on your life under this supplement is $10,000. This minimum does not apply to any other insureds covered under this supplement.

**What is the maximum amount of insurance that can be continued under this supplement?**

The maximum amount of insurance that can be continued under this supplement is the amount of insurance that was in force on your portability date, but not more than $500,000 for an employee or $100,000 for a spouse.

**Will the amount of insurance continued under this supplement change?**

Yes.  When you attain age 65, the amount of insurance on your life continued under this supplement will reduce to 65% of the amount of insurance in force on the day prior to your attainment of age 65.  Your insurance terminates at age 70.

**Can you request a change in your amount of insurance continued under this supplement?**

Yes.  You may elect to reduce the amount of insurance on your life.  Your remaining amount of insurance must be at least $10,000.

The amount of insurance continued under this supplement will never increase.

**How will premium contributions be paid?**

Premium contributions will be paid directly to us on a monthly, quarterly, semi-annual, or annual basis and will be subject to an administrative charge per billing period.  We may adjust the amount of the charge, but not more often than once per year.

**Can the premium rate change?**

Yes.  The premium rate may increase on the portability date.  The premium rate may also increase in the future but will not change more often than once per year.

**Can insurance continued under this supplement be converted to a policy of individual insurance?**

Yes.  At any time after insurance has been continued under the provisions of this supplement, it may be converted to a policy of individual insurance with Minnesota Life.  All other conditions and provisions of the conversion right section of your certificate to which this supplement is attached will apply.

**What happens if you again become eligible under your certificate?**

If you are continuing coverage under the terms of this supplement, and again meet the eligibility requirements of your certificate, not including the terms of this supplement, you shall no longer be considered to have portability status.  Insurance may be continued only under the terms of your certificate, not including this supplement unless and until you no longer meet the eligibility requirements of your certificate and again return to portability status as provided for herein.

**What happens to insurance provided under this supplement when the group policy terminates?**

Anything in the group policy notwithstanding, termination of the group policy by the policyholder or us will not terminate life insurance then in force for any person under the terms of this supplement.  The group policy will be deemed to remain in force solely for the purpose of continuing such insurance, but without further obligation of the policyholder.

Any insurance continued under the terms of this supplement will remain in force until terminated by the provisions of the section entitled "When will insurance continued under this supplement terminate?".

No individual may elect coverage under this supplement on or after the date of termination of the group policy.

**When will insurance continued under this supplement terminate?**

Insurance being continued under this supplement will terminate on the earliest of the following:

(1) your 70th birthday; or
(2) the date you again meet the eligibility requirements of your certificate, not including the terms of this supplement; or
(3) in the case of a dependent child or a spouse who is insured by a supplement to the employee's coverage, the date the employee's coverage is no longer being continued under this supplement, or the date the employee's spouse or child ceases to be eligible as defined under the terms of the group policy, unless the spouse ports coverage on his or her own as provided under the terms of this supplement; or
(4) in the case of a dependent child who is insured by a supplement to the former spouse's coverage, the date the child ceases to be an eligible dependent as defined under the terms of the group policy; or
(5) 31 days after the due date of any premium contribution which is not made.

Secretary                                    President

## Notice

**Minnesota Life Insurance Company** - A Securian Company
400 Robert Street North  ●  St. Paul, Minnesota 55101-2098

**MINNESOTA LIFE**

This notice is required by the Illinois Religious Freedom Protection and Civil Union Act ("the Act"). Effective June 1, 2011, Minnesota Life Insurance Company is required to comply with the Act. We have implemented policies and procedures to comply with the Act.

You should be aware that the Act:

- Creates a legal relationship between two persons of the same or opposite sex who form a civil union. According to the Act, parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by laws of Illinois to spouses.

- Provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Illinois law. This includes the terms "marriage" or "married" or variations thereon.

- Requires recognition of civil unions or same sex civil unions or marriages legally entered into in other jurisdictions.

- Does not alter any current federal law.

For more information about existing Illinois law and the Act, please refer to the Consumer Fact Sheet available at the Illinois Department of Insurance website at www.insurance.illinois.gov.

# *Your Rights Under ERISA*_____

The following section contains information provided to you by the Plan Administrator of your Plan to meet the requirements of the Employee Retirement Income Security Act of 1974 (ERISA). It does not constitute a part of the insurance policy issued in connection with the Plan. All inquiries relating to the following material should be referred directly to your Plan Administrator. This information should be attached to your certificate of insurance. Together they comprise your Summary Plan Description (SPD).

# *Summary Plan Description*_____

## *General Information*

| | |
|---|---|
| **Name of Plan** | Tribune Company Benefit Program |
| **Plan Sponsor** | Name:   Tribune Company<br>Address: 435 North Michigan Avenue<br>          Chicago, IL  60611 |
| **Identification Numbers** | Employer Identification Number (EIN):  36-1880355<br><br>Plan Number:  502 |
| **Type of Plan** | Welfare Plan providing life insurance and associated benefits for employees. |
| **Administration of Plan** | The Plan is administered by the Plan Administrator through an insurance policy(ies) purchased from Minnesota Life Insurance Company, 400 Robert Street North, St. Paul, MN 55101. Generally, the Plan Administrator oversees the operation and records of a plan. |
| **Plan Administrator** | Name:   Tribune Company<br>Address: 435 North Michigan Avenue<br>          Chicago, IL  60611 |
| **Agent for Service of Legal Process** | Name:   Tribune Company<br>Address: 435 North Michigan Avenue<br>          Chicago, IL  60611 |
| **Plan Year** | January 1 – December 31 |
| **Plan Funding** | The Plan has an insurance policy(ies) with Minnesota Life Insurance Company. The premiums for the policy(ies) are paid by employer and employee contributions. |
| **Interpretation, Amendment and Termination** | The plan sponsor reserves the right to interpret, change or terminate the Plan's operation in the future. In the event of termination, benefits would be discontinued as described in the certificate. |

## *Claim Procedures*

Under Department of Labor (DOL) regulations, claimants are entitled to full and fair review of any claims made under the Plan. The procedures described in this section are intended to comply with DOL regulations by providing reasonable procedures governing the filing of benefit claims, notification of benefit decisions, and appeal of adverse benefit decisions.

A.  Presenting Claims for Benefits

Claim forms may be obtained from the Employer.

Contact your Plan Administrator if you have any questions or need claim forms.  Read the instructions on those forms carefully, and be sure all the questions are answered and that you include any required attachments when the completed forms are returned.  After your claim has been processed by Minnesota Life, you will be notified in writing if any benefits are denied in whole or in part, or if any additional information is required.

During all steps of the claims appeal procedure, you can write or call the appropriate Plan Administrator and ask to see all plan documents affecting your claim.  In addition you may have an attorney or other representative write letters or otherwise act on your behalf, but the Plan Administrator reserves the right to require written authorization from you.

B.  Claims Denial Procedure

If all or part of your claim for benefits is denied, Minnesota Life will notify you in writing within 90 days (45 days for any disability claims) of receiving your claim.  If special circumstances require more time, the review period may be extended up to an additional 90 days (30 days for disability claims). You will be notified in writing of this extension within the original review period.

The notice of extension will include a description of the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim and the information needed to resolve those issues, and it shall specify a timeframe, no less than 45 days, in which the necessary information must be provided. Where the timeframe to process a claim is extended because the claim was incomplete, the extension time is calculated from the date the extension notice is sent to the claimant to the date the person responds to the request for additional information. If the person does not provide needed information to the Plan within 45 days of the date on the notice the Plan may close the claim and no further consideration will take place.

Any denial of a claim for benefits will be provided by Minnesota Life and consist of a written explanation which will include (i) the specific reasons for the denial, (ii) reference to the pertinent Plan provisions upon which the denial is based, (iii) a description of any additional information you might be required to provide and explanation of why it is needed, and (iv) an explanation of the Plan's claim review procedure.

Disability Claims Only – The following will also be included:

*   A statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse decision.

*   Explanation of the scientific or clinical judgment applying the terms of the Plan to the claimant's medical circumstances, if applicable.

C.  Appealing the Denial of a Claim

You, your beneficiary (when an appropriate claimant), or a duly authorized representative may appeal any denial of a claim for benefits by filing a written request for a full and fair review to Minnesota Life.  In connection with such a request, documents pertinent to the administration of the Plan may be reviewed, and comments and issues outlining the basis of the appeal may be submitted in writing.  You may have representation throughout the review procedure.  A request for a review must be filed by 60 days (180 days for any disability claims) after receipt of the written notice of denial of a claim.  The full and fair review will be held and a decision

rendered by Minnesota Life, no later than 60 days (45 days for disability claims) after receipt of the request for review.

If special circumstances require more time, the review period may be extended up to an additional 60 days (45 days for disability claims). You will be notified in writing of this extension within the original appeal period.

The notice of extension will include a description of the missing information and shall specify a timeframe, no less than 60 days (180 days for disability claims), in which the necessary information must be provided. Where the timeframe to process an appeal is extended because the claim was incomplete, the time for the benefit determination is put on hold from the date the extension notice is sent to the claimant until the date the person responds to the request for additional information. If the person does not provide needed information to the Plan within the 60 days (180 days for disability claims) of the date on the notice the Plan will close the appeal and no further consideration will take place.

A decision on appeal is adverse if it is a denial, reduction or termination of a benefit, or a failure to provide or make payment, in whole or part, for a benefit. It also includes any such denial, reduction, termination or failure to provide or make payment that is based on a determination that the claimant is no longer eligible to participate in a plan.

Written notification of the Plan's decision on a disability or non-disability appeal shall be provided to the claimant and will include the following:

- Explanation of the specific reasons for the denial

- A specific reference to pertinent Plan provisions on which the denial was based

- A statement regarding your right, upon request and free of charge, to reasonable access to review or copy pertinent documents

- A statement of the right to sue in federal court.

Disability Claims Only

- A statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse decision

- Explanation of the scientific or clinical judgment applying the terms of the Plan to the claimant's medical circumstances, if applicable.

D.  Legal Action Following Appeals

After completing all mandatory appeal procedures, you have the right to further appeal adverse benefit determinations by bringing a civil action under the Employee Retirement Income Security Act (ERISA). Please refer to the Statement of ERISA Rights section for more details. No such action may be filed against the Plan after two years from the date the Plan gives you a final determination on your appeal. Also, no legal action may be brought if you do not file a claim for a benefit and seek timely review of a denial of that claim.

## Statement of ERISA Rights

The Statement of ERISA rights is required by federal law and regulation.

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA).

ERISA provides that all Plan participants shall be entitled to:

- Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all Plan documents, including the insurance contract, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as detailed annual reports and Plan descriptions.

- Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Employee benefit Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries.

No one, including your Employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

If your claim for a welfare benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Plan review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials for the Plan and do not receive them within 30 days, you may file a suit in federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay the cost and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration (EBSA), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, EBSA, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the EBSA.

**MINNESOTA LIFE**

400 Robert Street North · St. Paul, Minnesota 55101-2098

**GROUP TERM LIFE CERTIFICATE OF INSURANCE**

# EXHIBIT "2"

## Group Life Insurance Evidence of Insurability

Minnesota Life Insurance Company - A Securian Company
400 Robert Street North • B1-3102 • St. Paul, Minnesota 55101-2098 • Fax 651-665-7092

**MINNESOTA LIFE**

**EMPLOYER NAME: Tribune**                    **POLICY NUMBER: 33803**

### EMPLOYEE INFORMATION

| First name | Middle initial | Last name | Email address |
|---|---|---|---|
| RAYMOND J SCHONBAK | | | RSCHONBAK@TRIBUNE.COM |

| Street address | | City | State | Zip code |
|---|---|---|---|---|
| 16620 VIA VARESE | | RANCHO SANTA FE | CA | 92091 |

| Date of birth | Employee ID | Date of employment | Gender |
|---|---|---|---|
| 01/29/1943 | 111978 | 03/24/2008 | ☒ Male ☐ Female |

Total amount of supplemental life insurance requested
$ 1,507,000

### SPOUSE/DOMESTIC PARTNER INFORMATION

| First name | Middle initial | Last name | Date of birth |
|---|---|---|---|
| N/A | | | |

| Email address | Gender |
|---|---|
| N/A | ☐ Male ☐ Female |

Total amount of spouse/domestic partner life insurance requested
$

### HEALTH QUESTIONS - (must be answered for coverage that is not guaranteed)

| Employee | Spouse/DP | Employee | Spouse/domestic partner | |
|---|---|---|---|---|
| Yes No | Yes No | Height 6' 11"   Weight 125 | Height N/A   Weight N/A   Occupation N/A | |
| ☒ ☐ | N/A | 1. During the past three years, have you for any reason consulted a physician(s) or other health care provider(s), or been hospitalized? | | |
| ☒ ☐ | N/A | 2. Have you ever had, or been treated for, any of the following: heart, lung, kidney, liver, nervous system, or mental disorder; high blood pressure; stroke; diabetes; cancer or tumor; drug or alcohol abuse including addiction? | | |
| ☐ ☒ | N/A | 3. Have you ever been treated or diagnosed by a physician as having Acquired Immune Deficiency Syndrome (AIDS), or any disorder of your immune system; or had any test showing evidence of antibodies to the AIDS virus (a positive HIV test)? | | |

If you answer yes to any question, give details including dates, names and addresses of doctors or hospitals, the reason for the visit or consultation, the diagnosis, and the treatment in the Additional Health Information Section on the second page or on a separate sheet of paper.

### AUTHORIZATION

The answers provided on this application are representations of the person signing below. The answers given are true and complete. It is understood that Minnesota Life Insurance Company, (the Company), St. Paul, Minnesota 55101-2098 shall incur no liability because of this application unless and until it is approved by the Company and the first premium is paid while my health and other conditions affecting my insurability are as described in this application. I understand that false or incorrect answers to the above questions may lead to rescission of coverage. If coverage is rescinded, an otherwise valid claim will be denied.

To determine my insurability or for claim purposes, I authorize any person(s), medical practitioner, institution, insurance company or Medical Information Bureau (MIB) to give any medical or nonmedical information about me including alcohol or drug abuse, to the Company and its reinsurers. I authorize all said sources, except MIB, to give such information to any agency employed by the Company to collect and transmit such information. I understand in determining eligibility for insurance or benefits, this information may be made available to underwriting, claims, medical and support staff of the Company. If I do not revoke this authorization, it will be valid for 24 months from the date I sign it. A photocopy shall be as valid as the original. I have read this Authorization and the Consumer Privacy Notice on the second page and I understand that I can have copies.

| Employee signature | Daytime telephone number | Evening telephone number | Date signed |
|---|---|---|---|
| X  Signed electronically by RAYMOND J SCHONBAK | 858-496-0241 | 858-832-1014 | 12/02/2012 |

| Spouse/domestic partner signature | Daytime telephone number | Evening telephone number | Date signed |
|---|---|---|---|
| X  N/A | N/A | N/A | N/A |

## CONSUMER PRIVACY NOTICE

To underwrite your insurance request, the Company may ask for additional personal information, such as an insurance medical exam; lab tests; medical records from your insurance company, physician or hospital; a report from the Medical Information Bureau (MIB), a non-profit organization of life insurance companies that exchanges information among its members. Information about your insurability is confidential. Without your express authorization, the Company or its reinsurers may send your information to government agencies that regulate insurance; or, without identifying you, to insurance organizations for statistical studies; or may make a brief report of health information to the MIB. If you apply to a MIB member company for life or health insurance, or submit a benefits claim for benefits to a member company, the MIB, upon request, will supply the member company with the information in its file. You or your authorized representative have the right to: receive by mail or to copy your personal information in the Company or MIB files, including the source and who received copies within the past two years; to correct or amend personal information in these files; to know specific reasons why coverage was not issued as applied for; and to revoke your authorization at any time. At your written request, within 30 days the Company will explain in writing how to learn what is in your file, its source, how to correct or amend it or how to learn why coverage was not issued as applied for. You can send a written statement as to why you disagree. If we correct or amend the information, we will notify you and anyone who may have received the information. If we do not agree with your statement, we will notify you and keep your statement in your file.

**For further information about your file or your rights, you may contact:**

Group Division Underwriting
Minnesota Life Insurance Company
400 Robert Street North
St. Paul, Minnesota 55101-2098
Telephone: (800) 872-2214

**For information about the MIB, you may contact:**

MIB
50 Braintree Hill, Suite 400
Braintree, MA  02184-8734
MIB Telephone: (866) 692-6901
MIB TTY: (866) 346-3642
Website: www.mib.com

## ADDITIONAL HEALTH INFORMATION

| NAME | DATE | NAME AND ADDRESS OF DOCTOR, CLINIC, HOSPITAL | REASON FOR CONSULTATION | DIAGNOSIS AND TREATMENT |
|------|------|---------------------------------------------|-------------------------|-------------------------|
|  |  | See Attached |  |  |

**FOR HOME OFFICE USE ONLY:**                                      **POLICY NUMBER: 33603**

| Employee  RAYMOND J SCHONBAK | | | Spouse/Domestic Partner | | |
|------------------------------|--------------|--------------------|-------------------------|----------------|-------------------|
| Current in force | Total elected | U/W applied for | Current in force | Total elected | U/W applied for |
| $ 0 | 5X Salary | $ 1,507,000 | $ | $ | $ |
| ☐ Approved  ☐ Declined  ☐ Incomplete | | | ☐ Approved  ☐ Declined  ☐ Incomplete | | |
| By | | Date | By | | Date |

D3-30567.12

EdF71074 0-2009

Additional details provided by question:

| Q | Additional detail |
|---|---|

Diagnosis and treatment details provided:

| Q | Reason | Dates | Diagnosis and treatment | Facilities |
|---|---|---|---|---|
| 1 | pancreatic cancer | 01042012, 10172012 | Panreatic cancer, chemotherpy, radiation and whipple surgery | • UCSD Medical Center |
| 2 | cancer | 01042012 | pancreatic cancer, chemotherpy, radiion and whipple surgery | • UCSD Medical Center |

Facility details

| Facility | Doctors | Phone number |
|---|---|---|
| UCSD Medical Center<br>9350 Campus Point Drive<br>La Jolla, CA 92037 | Paul Fanta | 858-822-7973 |

# EXHIBIT "3-A"

View Pay Statement                                                                    Page 1 of 1



**TRIBUNE**
HR8PRD

Home  |  Add to Favorites  |  Sign out

New Window | ⊕

## View Pay Statement
Raymond Schonbak
Hide

**TRIBUNE**

| | |
|---|---|
| Company: | KSWB, LLC |
| Address: | 7191 Engineer Road |
| | San Diego, CA 92111 |

| | |
|---|---|
| Net Pay: | $9,067.00 |
| Pay Begin Date: | 01/06/2013 |
| Pay End Date: | 01/19/2013 |
| Check Date: | 01/25/2013 |
| Go To: | View a Different Pay Statement |
| | Return to Self Service |

### General

| | | | |
|---|---|---|---|
| Name: | Raymond J. Schonbak | Business Unit: | 225TR |
| Employee ID: | 111978 | Pay Group: | 225-A Cycle Lag Sun-Sat |
| Address: | 16620 Via Varose | Department: | 2257481500 - General & Adminis |
| | Rancho Santa Fe, CA 92091 | Location: | CA-San Diego;7191 Engineer Rd |
| | | Job Title: | Executive Vice President |
| | | Pay Rate: | $463,500.00    Annual |

### Tax Data

| | | | | |
|---|---|---|---|---|
| Fed Marital Status: | Married | CA Marital Status: | Single, or Married with two or more inco | |
| Fed Allowances: | 9 | CA Allowances: | 0 | |
| Fed Addl Percent: | 0.000 | CA Addl Percent: | 0.000 | |
| Fed Addl Amount: | $0.00 | CA Addl Amount: | $0.00 | |

### Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 17,826.92 | 16,289.09 | 6,006.29 | 2,753.63 | 9,067.00 |
| YTD | 349,653.84 | 346,576.18 | 136,308.77 | 5,507.26 | 207,837.81 |

### Earnings

| Description | Prior Period Begin Dt | Prior Period End Dt | Hours | Rate | Amount | YTD Hours | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular | | | 80.00 | | 17,826.92 | 144.00 | 32,088.46 |
| Holiday Pay - Salaried | | | | | | 16.00 | 3,565.38 |
| Key Operators Bonus | | | | | | | 314,000.00 |
| **Total:** | | | 80.00 | | 17,826.92 | | 349,653.84 |

### Other Taxable Income

| Description | Current Amount | YTD Amount |
|---|---|---|
| Basic Life* | 239.59 | 479.18 |
| *Taxable Benefit: | | 0.00 |
| **Total:** | 239.59 | 479.18 |

### Taxes

| Description | Current Amount | YTD Amount |
|---|---|---|
| Fed Withholding | 3,913.52 | 85,363.82 |
| Fed MED/EE | 259.45 | 5,071.91 |
| Fed OASDI/EE | | 7,049.40 |
| Fed Addl Med | 161.04 | 1,348.08 |
| CA Withholding | 1,672.28 | 35,466.76 |
| CA OASDI/EE | | 1,008.80 |
| **Total:** | 6,006.29 | 136,308.77 |

### Before-Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| Medical | 150.57 | 300.74 |
| Dental | 18.88 | 37.76 |
| Vision | 3.75 | 7.50 |
| 401k | 1,247.68 | 2,495.76 |
| 401KCUP | 356.54 | 713.08 |
| **Total:** | 1,777.42 | 3,554.84 |

### After-Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| Supp Life | 855.51 | 1,711.32 |
| STD | 11.08 | 22.16 |
| LTD EE | 109.62 | 219.24 |
| **Total:** | 976.21 | 1,952.42 |

### Net Pay Distribution

| Payment Type | Paycheck Number | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 5776147 | Checking | 7834358092 | 9,067.00 |

Hide

Go To: Return to Self Service
View a Different Pay Statement

# EXHIBIT "3-B"



# EXHIBIT "3-C"



**TRIBUNE** HR8PRD

Home    |    Add to Favorites    |    Sign out

New Window | Help

**View Pay Statement**
Raymond Schonbak
Hide
Company:
KSWB, LLC
Address:
719 Engineer Road
San Diego, CA 92111

**TRIBUNE**

| | |
|---|---|
| Net Pay: | $215,349.00 |
| Pay Begin Date: | 01/23/2013 |
| Pay End Date: | 01/23/2013 |
| Check Date: | 01/25/2013 |
| Go To: | View a Different Pay Statement |
| | Return to Self Service |

**General**

| | | | |
|---|---|---|---|
| Name: | Raymond J. Schonbak | Business Unit: | 225TR |
| Employee ID: | 111978 | Pay Group: | 225-A Cycle Lag Sun-Sat |
| Address: | 18620 Via Varese | Department: | 2257481500 - General & Adminis |
| | Rancho Santa Fe, CA 92091 | Location: | CA-San Diego;7191 Engineer Rd |
| | | Job Title: | Executive Vice President |
| | | Pay Rate: | $463,500.00    Annual |

**Tax Data**

| | | |
|---|---|---|
| Fed Marital Status: Married | CA Marital Status: | Single, or Married with two or more inco |
| Fed Allowances: 9 | CA Allowances: | 0 |
| Fed Addl Percent: 0.000 | CA Addl Percent: | 0.000 |
| Fed Addl Amount: $0.00 | CA Addl Amount: | $0.00 |

**Paycheck Summary**

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 345,000.00 | 345,000.00 | 129,651.00 | 0.00 | 215,349.00 |
| YTD | 694,653.84 | 691,578.18 | 265,959.77 | 5,507.26 | 423,186.81 |

**Earnings**

| Description | Prior Period Begin Dt | Prior Period End Dt | Hours | Rate | Amount | YTD Hours | YTD Amount |
|---|---|---|---|---|---|---|---|
| Management Incentive Pay | | | | | 345,000.00 | | 345,000.00 |
| Holiday Pay - Salaried | | | | | | 16.00 | 3,585.38 |
| Key Operators Bonus | | | | | | | 314,000.00 |
| Regular | | | | | | 144.00 | 32,088.46 |
| | | | | | | | |
| **Total:** | | | | | 345,000.00 | | 694,653.84 |

**Other Taxable Income**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Basic Life* | | 476.18 |
| | | |
| **Taxable Benefit | | 0.00 |
| **Total:** | | 476.18 |

**Taxes**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Fed Withholdng | 86,250.00 | 172,613.82 |
| Fed MED/EE | 5,002.50 | 10,074.41 |
| Fed OASDI/EE | | 7,049.40 |
| Fed Addl Med | 3,105.00 | 4,453.08 |
| CA Withholdng | 35,293.50 | 70,760.26 |
| CA OASDI/EE | | 1,008.80 |
| | | |
| **Total:** | 129,651.00 | 265,959.77 |

**Before-Tax Deductions**

| Description | Amount | YTD Amount |
|---|---|---|
| Medical | | 300.74 |
| Dental | | 57.76 |
| Vision | | 7.50 |
| 401k | | 2,495.76 |
| 401KCUP | | 713.08 |
| | | |
| **Total:** | | 3,554.84 |

**After Tax Deductions**

| Description | Amount | YTD Amount |
|---|---|---|
| Supp Life | | 1,711.02 |
| STD | | 22.16 |
| LTD EE | | 219.24 |
| | | |
| **Total:** | | 1,952.42 |

**Net Pay Distribution**

| Payment Type | Paycheck Number | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 5784943 | Checking | 7504338092 | 215,349.00 |

Hide

Go To: Return to Self Service

# EXHIBIT "3-D"

| KSWB, LLC<br>7791 Engineer Road<br>San Diego, CA 92111 | Pay Group: | ALI-225-A Cycle Lag Sun-Sat | | Business Unit: | 225TK |
|---|---|---|---|---|---|
| | Pay Begin Date: | 03/31/2013 | | Advice #: | 5848995 |
| | Pay End Date: | 04/13/2013 | | Advice Date: | 04/19/2013 |

| | | | | TAX DATA: | Federal | CA State |
|---|---|---|---|---|---|---|
| Raymond J. Schonhok<br>18620 Via Varese<br>Rancho Santa Fe, CA 92091 | Employee ID: | 111978 | | Marital Status: | Married | S/M-2 inc |
| | Department: | 2257481500-General & Administrative | | Allowances: | 3 | 0 |
| | Location: | CA-San Diego:7191 Engineer Rd | | Addl. Percent: | | |
| | Job Title: | Executive Vice President | | Addl. Amount: | | |
| | Pay Rate: | $463,500.00 Annual | | | | |

**HOURS AND EARNINGS**

| | | Current | | YTD | | TAXES | | |
|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hours | Earnings | Hours | Earnings | Description | Current | YTD |
| Regular | | | $17,826.92 | 616.00 | $137,267.29 | Fed Withholding | $4,214.49 | $197,295.82 |
| Basic Life (Taxable) | | | $239.59 | | $1,916.72 | Fed MED/EE | $259.46 | $11,631.15 |
| Management Incentive Pay | | | $0.00 | | $345,000.00 | Fed OASDI/EE | $0.00 | $7,049.40 |
| Holiday Pay - Salaried | | | $0.00 | 16.00 | $3,565.38 | Fed Addl Med | $161.00 | $5,419.33 |
| Key Operators Bonus | | | $0.00 | | $314,000.00 | CA Withholding | $1,672.28 | $60,793.94 |
| Sick Pay-Salaried | | | $0.00 | 8.00 | $1,782.69 | CA OASDI/EE | $0.00 | $5,008.80 |
| | | 0.00 | $17,826.92 | 640.00 | $801,615.36 | TOTAL: | $6,307.27 | $303,201.44 |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | YTD |
| Medical | $150.37 | $1,202.96 | Supplemental Life | $855.51 | $6,844.08 | Medical | 279.98 | 2,239.84 |
| Dental | $18.88 | $151.04 | Short Term Disability | $11.08 | $88.64 | Dental | 10.62 | 84.96 |
| Vision deduction | $3.75 | $30.00 | Long-Term Disability (EE-Paid) | $109.62 | $876.96 | Basic Life | 9.76 | 78.08 |
| 401k Savings Plan | $1,247.88 | $9,983.04 | | | | | | |
| Pre-Tax EE 401K catch-up | $356.54 | $2,852.32 | | | | | | |
| TOTAL: | $1,777.42 | $14,219.36 | TOTAL: | $976.21 | $7,809.68 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | $17,826.92 | $16,289.09 | $6,307.27 | 2,753.63 | $8,766.02 |
| YTD | $801,615.36 | $789,312.72 | $303,201.44 | 22,029.04 | $476,384.88 |

**NET PAY DISTRIBUTION**

| | | Account Type | Account Number | Deposit Amount |
|---|---|---|---|---|
| Advice # | 5848995 | Checking | 7834338092 | 8,766.02 |
| TOTAL: | | | | $8,766.02 |

MESSAGE:

# EXHIBIT "3-E"

| KSWB, LLC | | Pay Group: | ALi-225-A Cycle Lag Sun-Sat | | Business Unit: | 225TR |
|---|---|---|---|---|---|---|
| 7191 Engineer Road | | Pay Begin Date: | 07/07/2013 | | Advice #: | 5928128 |
| San Diego, CA 9211. | | Pay End Date: | 07/20/2013 | | Advice Date: | 07/26/2013 |

| | | | | | TAX DATA: | | Federal | CA State |
|---|---|---|---|---|---|---|---|---|
| Raymond J. Schenbak | | Employee ID: | 111978 | | Marital Status: | | Married | S/M-2 inc |
| 18620 Via Varese | | Department: | 2257481500-General & Administrative | | Allowances: | | 3 | 0 |
| Rancho Santa Fe, CA 92091 | | Location: | CA-San Diego:7191 Engineer Rd | | Addl. Percent: | | | |
| | | Job Title: | Executive Vice President | | Addl. Amount: | | | |
| | | Pay Rate: | $463,500.00 Annual | | | | | |

| HOURS AND EARNINGS | | | | | | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Current | | VTD | | | | |
| Description | Rate | Hours | Earnings | Hours | Earnings | Description | | Current | YTD |
| Regular | | | $17,826.92 | 1,080.00 | $240,643.43 | Fed Withholding | | $4,640.56 | $227,226.62 |
| Basic Life (Taxable) | | | $239.59 | | $3,593.85 | Fed MED/EE | | $259.46 | $13,447.34 |
| Vacation Pay-Salaried | | | $0.00 | 48.00 | $10,696.15 | Fed OASDI/EE | | $0.00 | $7,049.40 |
| Key Operators Bonus | | | $0.00 | | $314,000.00 | Fed Addl Med | | $161.04 | $6,546.62 |
| Floating Holiday Pay-Salaried | | | $0.00 | 8.00 | $1,782.69 | CA Withholding | | $1,825.70 | $92,651.32 |
| Sick Pay-Salaried | | | $0.00 | 8.00 | $1,782.69 | CA OASDI/EE | | $0.00 | $1,008.80 |
| Management Incentive Pay | | | $0.00 | | $345,000.00 | | | | |
| Bereavement - Salaried | | | $0.00 | 24.00 | $5,348.08 | | | | |
| Holiday Pay - Salaried | | | $0.00 | 32.00 | $7,130.76 | | | | |
| | | 0.00 | $17,826.92 | 1,200.00 | $926,403.80 | TOTAL: | | $6,885.06 | $347,930.10 |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | YTD |
| Medical | $150.37 | $2,255.55 | Supplemental Life | $855.51 | $2,832.65 | Medical | 279.98 | 4,199.70 |
| Dental | $18.88 | $283.20 | Short Term Disability | $11.08 | $166.20 | Dental | 10.62 | 159.30 |
| Vision deduction | $3.75 | $56.25 | Long-Term Disability (EE-Paid) | $109.62 | $1,644.30 | Basic Life | 9.76 | 146.40 |
| 401k Savings Plan | $29.68 | $17,500.00 | | | | | | |
| Pre-Tax EE 401K catch-up | $356.54 | $5,348.10 | | | | | | |
| TOTAL: | $559.22 | $25,443.10 | TOTAL: | $976.21 | $14,643.15 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | $17,826.92 | $17,507.29 | $6,885.06 | 1,535.43 | $9,406.43 |
| YTD | $926,403.80 | $904,554.55 | $347,930.10 | 40,086.25 | $538,387.45 |

| NET PAY DISTRIBUTION | | | | |
|---|---|---|---|---|
| | | Account Type | Account Number | Deposit Amount |
| Advice # | 5928128 | Checking | 7834333092 | 9,406.43 |
| TOTAL: | | | | $9,406.43 |

MESSAGE:

# EXHIBIT "3-F"

| KSWB, LLC<br>7191 Engineer Road<br>San Diego, CA 92111 | Pay Group:<br>Pay Begin Date:<br>Pay End Date: | ALI-225-A Cycle Lag Sun-Sat<br>07/21/2013<br>08/03/2013 | Business Unit:<br>Advice #:<br>Advice Date: | 225TR<br>5939441<br>08/09/2013 |

| Raymond J. Schonbak<br>18620 Via Varese<br>Rancho Santa Fe, CA 92091 | Employee ID:<br>Department:<br>Location:<br>Job Title:<br>Pay Rate: | 11197R<br>225748I500-General & Administrative<br>CA-San Diego:7191 Engineer Rd<br>Executive Vice President<br>$463,500.00 Annual |

| TAX DATA: | Federal | CA State |
|---|---|---|
| Marital Status: | Married | S/M-2 inc |
| Allowances: | 3 | 0 |
| Addl. Percent: | | |
| Addl. Amount: | | |

### HOURS AND EARNINGS

| Description | Rate | Current Hours | Earnings | YTD Hours | YTD Earnings |
|---|---|---|---|---|---|
| Regular | | | $16,044.23 | 1,152.00 | $256,707.66 |
| Floating Holiday Pay-Salaried | 222.836538 | 8.00 | $1,782.69 | 16.00 | $3,565.38 |
| Basic Life (Taxable) | | | $239.59 | | $3,833.44 |
| Vacation Pay-Salaried | | | $0.00 | 48.00 | $10,696.15 |
| Key Operators Bonus | | | $0.00 | | $214,000.00 |
| Sick Pay-Salaried | | | $0.00 | 8.00 | $1,782.69 |
| Management Incentive Pay | | | $0.00 | | $345,000.00 |
| Bereavement - Salaried | | | $0.00 | 24.00 | $5,348.08 |
| Holiday Pay - Salaried | | | $0.00 | 32.00 | $7,130.76 |
| | | 8.00 | $17,826.92 | 1,280.00 | $944,230.72 |

### TAXES

| Description | Current | YTD |
|---|---|---|
| Fed Withholding | $4,722.87 | $231,949.49 |
| Fed MED/EE | $259.45 | $13,706.75 |
| Fed OASDI/EE | $0.00 | $7,049.40 |
| Fed Addl Med | $161.05 | $6,707.67 |
| CA Withholding | $1,852.82 | $94,504.14 |
| CA OASDI/EE | $0.00 | $1,008.80 |
| TOTAL: | $6,996.19 | $354,926.29 |

### BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Medical | $150.37 | $2,405.92 |
| Dental | $18.88 | $302.08 |
| Vision deduction | $3.75 | $60.00 |
| 401k Savings Plan | $0.00 | $17,500.00 |
| Pre-Tax EE 401K catch-up | $151.90 | -$5,500.00 |
| TOTAL: | $324.90 | $25,768.00 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Supplemental Life | $855.51 | $13,688.16 |
| Short Term Disability | $11.08 | $177.28 |
| Long-Term Disability (EE-Paid) | $109.62 | $1,753.92 |
| TOTAL: | $976.21 | $15,619.36 |

### EMPLOYER PAID BENEFITS

| Description | Current | YTD |
|---|---|---|
| Medical | 279.98 | 4,479.68 |
| Dental | 10.62 | 169.92 |
| Basic Life | 9.76 | 156.16 |
| *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | $17,826.92 | $17,741.61 | $6,996.19 | 1,301.11 | $9,529.62 |
| YTD | $944,236.72 | $922,296.16 | $354,926.29 | 41,387.36 | $547,917.07 |

### NET PAY DISTRIBUTION

| Advice # 5939441 | Account Type | Account Number | Deposit Amount |
|---|---|---|---|
| | Checking | 783 4338092 | 9,529.62 |
| TOTAL: | | | $9,529.62 |

MESSAGE:

# EXHIBIT "3-G"

| KSWB, LLC | Pay Group: | AL1-225-A Cycle Lag Sun-Sat | Business Unit: | 225TR |
|---|---|---|---|---|
| 7191 Engineer Road | Pay Begin Date: | 08/18/2013 | Advice #: | 5961796 |
| San Diego, CA 92111 | Pay End Date: | 08/31/2013 | Advice Date: | 09/06/2013 |

| | | | TAX DATA: | Federal | CA State |
|---|---|---|---|---|---|
| Raymond J. Schonbak | Employee ID: | 171978 | Marital Status: | Married | S/M-2 tax |
| 16620 Via Varese | Department: | 225748150-General & Administrative | Allowances: | 3 | 0 |
| Rancho Santa Fe, CA 92091 | Location: | CA-San Diego;7191 Engineer Rd | Addl. Percent: | | |
| | Job Title: | Executive Vice President | Addl. Amount: | | |
| | Pay Rate: | $463,500.00 Annual | | | |

## HOURS AND EARNINGS / TAXES

| Description | Rate | Current Hours | Earnings | Hours | YTD Earnings | Description | Current | YTD |
|---|---|---|---|---|---|---|---|---|
| Regular | | | $17,826.92 | 1,312.00 | $292,361.50 | Fed Withholdng | $4,776.04 | $241,501.57 |
| Basic Life (Taxable) | | | $239.59 | | $4,312.62 | Fed MED/EE | $259.46 | $14,225.71 |
| Vacation Pay-Salaried | | | $0.00 | 48.00 | $10,696.15 | Fed OASDI/EE | $0.00 | $7,049.40 |
| Key Operators Bonus | | | $0.00 | | $314,000.00 | Fed Addl Med | $161.04 | $7,029.75 |
| Floating Holiday Pay-Salaried | | | $0.00 | 16.00 | $3,565.38 | CA Withholdng | $1,871.71 | $98,247.56 |
| Sick Pay-Salaried | | | $0.00 | 8.00 | $1,782.69 | CA OASDI/EE | $0.00 | $1,008.80 |
| Management Incentive Pay | | | $0.00 | | $345,000.00 | | | |
| Bereavement - Salaried | | | $0.00 | 24.00 | $5,348.08 | | | |
| Holiday Pay - Salaried | | | $0.00 | 32.00 | $7,130.76 | | | |
| | | 0.00 | $17,826.92 | 1,440.00 | $979,884.56 | TOTAL: | $7,068.25 | $369,862.79 |

## BEFORE-TAX DEDUCTIONS / AFTER-TAX DEDUCTIONS / EMPLOYER PAID BENEFITS

| Description | Current | YTD | Description | Current | YTD | Description | Current | YTD |
|---|---|---|---|---|---|---|---|---|
| Medical | $150.37 | $2,706.66 | Supplemental Life | $855.51 | $15,399.18 | Medical | 279.98 | 5,039.64 |
| Dental | $18.88 | $339.84 | Short Term Disability | $11.08 | $199.44 | Dental | 10.62 | 191.16 |
| Vision deduction | $3.75 | $67.50 | Long-Term Disability (EE-Paid) | $109.62 | $1,973.16 | Basic Life | 9.76 | 175.68 |
| 401k Savings Plan | $0.00 | $17,500.00 | | | | | | |
| Pre-Tax EE 401K catch-up | $0.00 | $5,500.00 | | | | | | |
| TOTAL: | $173.00 | $26,114.80 | TOTAL: | $976.21 | $17,571.78 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | $17,826.92 | $17,393.51 | $7,068.25 | 1,149.21 | $9,609.46 |
| YTD | $979,884.56 | $958,083.18 | $369,062.79 | 43,685.78 | $567,135.99 |

## NET PAY DISTRIBUTION

| | | Account Type | Account Number | Deposit Amount |
|---|---|---|---|---|
| Advice # | 5961796 | Checking | 7834338092 | 9,609.46 |
| TOTAL: | | | | $9,609.46 |

MESSAGE:

# EXHIBIT "4"

Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611

# TRIBUNE

Benefits Service Center
Telephone: 800/872-2222
FAX: 312/222-4644

November 25, 2013

Deborah Schonbak
18620 Via Varese
Rancho Santa Fe, CA 92091

Dear Mrs. Schonbak:

I would like to offer my deepest sympathy to you on the death of your spouse, Ray.

I can confirm that Ray was insured under the company Basic Life plan for S302,000 and the Supplemental Life plan for an additional $1,507,000. You are listed as the beneficiary for the life insurance policy. In order that we may file the insurance claim, please provide the following information in the enclosed envelope:

1. A certified copy of the Death Certificate including cause of death
2. Completed Minnesota Life Beneficiary Statement

Any beneficiary may assign their benefits to a funeral home. To do so, please include the completed assignment document (provided by the funeral home) with the Beneficiary Statement.

Please note that death claim processing may take up to six weeks from the time we receive the necessary documents.

In addition, you will receive a COBRA packet in the mail from our administrator, Ceridian, in case you want to continue with the Health Benefits.

You may contact Vanguard regarding any potential 401(k) benefits at (800) 523-1188.

Sincerely,

Jackie Revell
Benefits Representative
Tribune Benefits Service Center

# EXHIBIT "5"

**Minnesota Life Insurance Company**
A Securian Company

**Group Division Claims**
P.O. Box 64114
St. Paul, MN 55164-0114
For claims information:
1-888-658-0193
651-665-7106 fax
www.minnesotalife.com/benefits

# MINNESOTA LIFE

January 6, 2014

DEBORAH J SCHONBAK
17620 VIA VARESE
RANCHO SANTA FE CA 92091

RE: POLICY #     33803 - TRIBUNE
    CLAIM #      1033-315
    DECEASED:    RAYMOND J SCHONBAK

Dear Mrs. Schonbak:

We have recently been advised of the claim for life insurance benefits on behalf of your husband, Raymond J. Schonbak. Please accept our Company's sincere condolences.

Enclosed please find our checks in the amount of $302,000.00 plus accrued interest representing the basic life insurance coverage. This check also includes a premium refund of $19,676.73, as we are unable to consider payment on the supplemental life insurance. Please allow me to explain.

Your husband applied for additional life insurance on December 2, 2012 in the amount of $1,507,000.00. Per the terms of this plan, this amount required satisfactory evidence of insurability before it becomes effective. This request was declined by our Medical Underwriting Department on December 4, 2012 due to his health history. Mr. Schonbak was sent two notices dated December 4, 2012 advising of this decline. I have enclosed copies of each of those notices.

The policy states the following:

***When does insurance become effective?***

*Insurance becomes effective on the date that all of the following conditions are met:*

*(3) we are satisfied with your evidence of insurability, if we require evidence;...*

As evidence of insurability was required for this coverage, and we did not approve him, he was not eligible for this coverage.

The supplemental life insurance was activated in error by the employer, Tribune and therefore premiums were collected for this coverage. As Mr. Schonbak was not eligible for this coverage, we are returning the premium collected for this coverage.

Deborah J Schonbak
January 6, 2013
Page 2

If you have any questions regarding this matter, or additional information you would like us to consider, please do not hesitate to contact our office at the toll free number listed above.

Sincerely,


Karen Mistelske
Examining Specialist
Group Claims


Enclosure:  ERISA/notices

Cc:  Tribune

# EXHIBIT "6-A"

Minnesota Life Insurance Company
A Securian Company

Group Division Underwriting
PO Box 64148
St. Paul, MN  55164-0148

For underwriting information call:
1-800-872-2214 toll free 7:00 am to 7:00 pm CST
651-665-5366
651-665-7092 fax

**MINNESOTA LIFE**

DECEMBER 4, 2012

RAYMOND SCHONBAK
18620 VIA VARESE
RANCHO SANTA FE  CA  92091

Tribune
Optional Life Insurance
Underwriting Request ID: 201091200000

Dear Raymond Schonbak:

Thank you for your application for optional life insurance.

Unfortunately, we cannot issue the insurance coverage you requested. Your application has been declined due to your history of pancreatic cancer.

This decision will not affect any guaranteed or existing amount of coverage.

**What is Group Insurance?**

Group insurance differs from individual insurance in that, personalized modifications such as conditional waivers, riders, or increased premiums cannot be utilized in order to make an offer of insurance. Since we cannot modify coverage for added risk related to the reason(s) as outlined, we cannot offer you coverage at this time.

**Can I obtain other types of insurance?**

Although our decision may be disappointing, it should not discourage you from applying for other forms of insurance. An individual insurance agent may be able to help you find a different type of policy with more liberal pricing or which allows modification of the policy to suit your needs.

If you would like more information about this decision, you may make a written request within 90 days or contact us at the toll free number listed above. If you have additional information you feel would impact this decision, please contact our office. We are always willing to review additional information that may impact the decline decision.

Your interest in obtaining this insurance through our company is sincerely appreciated.

Sincerely,
Group Underwriting - KMR

F42231  Rev 5-2012 - RJ1F

Side  1 of 1

# EXHIBIT "6-B"

## Notification Statement

Minnesota Life Insurance Company - A Securian Company
Group Division Underwriting • P.O. Box 64148 • St. Paul, Minnesota 55164-0148

1-800-872-2214
Fax 1-651-665-7092

**MINNESOTA LIFE**

DECEMBER 4, 2012

RAYMOND SCHONBAK
18620 VIA VARESE
RANCHO SANTA FE  CA  92091

This statement is to advise you that we have completed our underwriting review on the following life insurance coverage increase requests through Tribune. This pertains only to the request for additional levels of insurance and does not relate to any existing coverage or guaranteed issue that may already be in force. If any other requests are still in process, you will be notified of our decision on a future statement.

| Name of Applicant | Coverage Information | Decision |
|---|---|---|
| Raymond Schonbak | Supplemental Life | Declined on 12/04/2012 |

To maintain confidentiality, specific details on any declined coverage request will be explained in a separate letter to you.

Your new coverage (the amount underwritten) will be effective the date of the decision, or according to the plan's rules, whichever is later (for example, if applying during an annual enrollment, it may be delayed until the effective date of the enrollment).

You must be eligible for coverage and actively at work on the effective date of the approved coverage in order for it to become effective. If you are eligible for coverage, but are not actively at work due to sickness or injury, your coverage may be delayed until you return to active work.

Thank you for allowing us to assist you with your insurance needs. If you have any questions regarding the decision of your coverage, please contact our Underwriting Department by calling 1-800-872-2214.

If you have any questions regarding your life insurance coverage, please contact the Benefits Service Center at 1-800-872-2222.

cc: Tribune Benefits Administrator